SAMUEL LEE AND BARBARA LEE, PLAINTIFFS IN ERROR v. ELIZABETH LEE.

This case was argued by Mr Coxe, for the plaintiffs in error; and by Mr Lee and Mr Jones, for the defendant.

Mr Coxe cited,

Mr Justice THOMPSON delivered the opinion of the Court.
The plaintiffs in error presented their petition to the circuit

court of the United States for the county of Washington in the district of Columbia, setting forth, that they are persons of colour who are entitled to their freedom, and are now held in a state of slavery by the defendant in error, in the said county of Washington, contrary to law, and praying process, &c.

The defendant in the court below appeared and pleaded, that the petitioners are not entitled to their freedom as they have alleged, and issue being thereupon joined, the cause was tried by a jury.

Upon the trial, the petitioners proved that they were born in the state of Virginia, as slaves of Richard B. Lee, now deceased, who moved with his family into the county of Washington in the district of Columbia about the year 1816, leaving the petitioners residing in Virginia as his slaves, until the year 1820, when the petitioner Barbara was removed to the county of Alexandria in the district of Columbia, where she was hired to Mrs Muir, and continued with her thus hired for the period of one year. That the petitioner Sam was in like manner removed to the county of Alexandria, and was hired to general Walter Jones for a period of about five or six months. That after the expiration of the said periods of hiring, the petitioners were removed to the said county of Washington, where they continued to reside as the slaves of the said Richard B. Lee until his death, and since as the slaves of his widow, the defendant.

Upon which evidence the petitioners' counsel prayed the court to give to the jury the following instructions.

1. If the jury shall believe from the evidence aforesaid that the said petitioners, or either of them, were slaves born in Virginia, and that Mr Lee, their master, removed from Virginia in 1817 with his family to the county of Washington, and left said petitioners residing in Virginia; and subsequently to the year 1820 the petitioners, or either of them, were removed from Virginia directly to the county of Washington, they would be entitled to their freedom in the present suit.

2. If the jury shall believe from the said evidence that the petitioners, or either of them, were originally brought by their master, an inhabitant, and citizen of Washington county in this district, from Virginia to Alexandria county, and thence to Washington county; they are also entitled to their, his, or her

freedom, unless the jury shall also believe from the evidence aforesaid, that the residence in Alexandria county, was not merely transitory, but was bona fide and permanent.

The court gave the first instruction as prayed, but refused to give the second in the form asked, and in lieu thereof gave the following.

3. That if the petitioners were bona fide hired to persons residing in Alexandria, and served their regular terms of hire there, the petitioner Barbara for a year or more, and the petitioner Sam from three to six months, and upon the expiration of their respective terms of hire, were brought from Alexandria to Washington ; such hiring and residence in Alexandria constituted a residence sufficiently permanent to authorise such removal. That such removal from Alexandria to Washington, upon the expiration of such terms of hire, *does not infer such preconceived intent* to bring them from Virginia to Washington, as to render their intermediate residence in Alexandria merely transitory and mala fide, and their subsequent removal thence to Washington equivalent to a removal direct from Virginia to Washington.

The petitioners' counsel then prayed the court to instruct the jury,

4. That if they shall believe from the evidence aforesaid, that the bringing the petitioners from Virginia to Alexandria, by their owner, and hiring them there, *was merely colourable, with intent to evade the law,* that then the petitioners are entitled to their freedom.

The court refused to give this instruction, being of opinion, that there was no evidence in the case tending to prove, that the bringing of the petitioners from Virginia to Alexandria and hiring them there, was merely colourable, and with intent to evade the law. A further instruction was prayed by the petitioners' counsel, and refused by the court, but which it is unnecessary here particularly to notice.

To these several refusals a bill of exceptions was duly taken. A verdict and judgment were thereupon rendered for the defendant; and the cause comes here upon a writ of error.

On the part of the defendant in error a preliminary objection has been made to the jurisdiction of this court, growing out of the act of congress of the 2d of April 1816 (Davis's Col. 305),

which declares that no cause shall be removed from the circuit court for the district of Columbia to the supreme court, by appeal or writ of error; unless the matter in dispute shall be of the value of one thousand dollars, or upwards.

The matter in dispute in this case, is the freedom of the petitioners. The judgment of the court below is against their claims to freedom; the matter in dispute is, therefore, to the plaintiff in error, the value of their freedom, and this is not susceptible of a pecuniary valuation. Had the judgment been in favour of the petitioners, and the writ of error brought by the party claiming to be the owner, the value of the slaves as property, would have been the matter in dispute, and affidavits might be admitted to ascertain such value. But affidavits, estimating the value of freedom, are entirely inadmissible; and we entertain no doubt of the jurisdiction of the court.

The questions on the merits of the case arise upon the refusal of the court to give the instructions prayed on the part of the petitioners.

By the Maryland law of 1796 (Herty's Dig. 384), it is declared, that it shall not be lawful to import or bring into this state by land or water, any negro, mulatto, or other slave, for sale, or to reside within this state. And any person brought into this state as a slave, contrary to this act, if a slave before, shall thereupon cease to be the property of the person so importing, and shall be free.

And by the act of congress of the 27th of February 1801 (Davis's Col. 123), it is provided, that the laws of the state of Maryland, as they then existed, should be, and continue in force in that part of the district, which was ceded by that state to the United States.

The Maryland law of 1796 is, therefore, in force in the county of Washington; and the petitioners, if brought directly from the state of Virginia into the county of Washington, would, under the provisions of that law, be entitled to their freedom. This has not been denied on the part of the defendant in error, and indeed, is fully recognized by the court below in the first instruction given to the jury. And the question turns upon the refusal of the court to give the instructions prayed, in relation to the hiring of the petitioners in the county of Alexandria, before being brought into the county of Washington.

By the act of congress of the 24th of June 1812 (Davis's Col. 265, sec. 9), it is declared, "that hereafter, it shall be lawful for any inhabitant or inhabitants, in either of the said counties (Washington and Alexandria), owning and possessing any slave or slaves therein, to remove the same from one county into the other, and to exercise, freely and fully, all the rights of property, in and over the said slave or slaves therein, which would be exercised over him, her, or them, in the county from whence the removal was made."

Upon the construction to be given to this act, a difference of opinion is entertained by the judges. Some are of opinion, that to bring a case within this act of 1812, the slave must continue in the actual possession of the owner, being an inhabitant of one of the counties, in order to make the removal into the other county lawful. - They give a limited and literal construction to the words *owning* and *possessing*. And that the hiring in Alexandria, did not so change the situation of the petitioners, as to prevent their removal from Virginia being considered a direct removal into the county of Washington; and which of course made them free, under the act of 1796.

The other judges are of opinion, that actual possession by the owner, in his own family, is not necessary. But that a hiring out, bona fide, and without intention to evade the act of 1796; would so interrupt the continuity of the removal, as to take the case out of the act, and make the subsequent removal into the county of Washington lawful. That this law (1812), for the purpose of authorising the removal of slaves from one county into the other, considers the district composed of the two counties as entire: and gives the owner the full exercise of all his rights of property, over his slave in each county; in the same manner as if the district was not divided into two counties.

We think, however, the court erred in refusing to give the fourth instruction prayed on the part of the petitioners.

All that was asked by this instruction was, to submit to the jury, whether, from the evidence, the bringing of the petitioners from Virginia to Alexandria, and the hiring them there, was not merely colourable, with intent to evade the law.

The court had instructed the jury that a removal of the petitioners direct from Virginia to the county of Washington,

would have entitled them to their freedom. The object and purpose of the hiring in Alexandria, would seem necessarily to have been open to inquiry. And if open at all, it was matter of fact, consisting of circumstances, from which an inference was to be drawn; and this properly belonged to the jury. The court was not requested to instruct the jury as to the sufficiency of the evidence to justify the conclusion sought to be drawn from it; or to express any opinion as to the weight of the evidence. If, in the opinion of the court, the verdict of the jury should be found against the evidence, the proper correction, if at all to be applied by the court, would be by granting a new trial. But the refusal to give the instruction prayed, was taking from the jury the right of judging upon the intent. If intention was at all open for inquiry, it was certainly matter for the jury.

In the case of the United States v. Quincy (6 Peters 466), this court said, that when the intention with which an act is done, becomes a subject of inquiry, it belongs exclusively to the jury to decide. And in the case of the William King (2 Wheaton 148, 4 Cond Rep. 71), it is laid down as a general rule, that whatever is done in fraud of a law, is done in violation of it. That if a vessel, with an original intention to go to a foreign port, complied with the requisition necessary to obtain a clearance on a voyage coastwise; this is but the device, by which she eludes the force that would otherwise have prevented her departure from the port.

These are principles which have a direct bearing upon the present question. If the original intention of the owners of the slaves was to bring them into the county of Washington, the hiring of them in Alexandria might have been thought by the jury a device to evade the law of 1796.

It can hardly be said that such a conclusion would have been entirely without colour. The owner of these slaves resided in the county of Washington, and no reason is assigned for their remaining a short time in Alexandria, or why they were not wanted in Washington county, as much before, as after the hiring in Alexandria. Suppose the hiring had been for one week, or one day, would any one doubt, that it would have been done with a view to take the case out of the law of 1796, and would have been a fraud upon the law? And who in

such a case would judge of the intention? The court, or the jury? The answer cannot admit of a doubt.

The time of hiring in the present case, lessens the weight of the evidence, but does not transfer the weight of deciding upon it, from the jury to the court.

The judgment of the court below is accordingly reversed, and the cause sent back with directions to issue a venire de novo.

This cause came on to be heard on the transcript of the record from the circuit court of the United States, for the district of Columbia, holden in and for the county of Washington, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby reversed, and that this cause be, and the same is hereby remanded to the said circuit court, with directions to award a venire facias de novo.