# CASES

## ARGUED AND DETERMINED

#### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### CURLEY et al. v. UNITED STATES.

#### (Circuit Court of Appeals, First Circuit. March 1, 1904.)

#### No. 506.

**1. CONSPIRACY TO DEFRAUD THE UNITED STATES—STATUTES—CONSTRUCTION.**

Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], providing that if two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all shall be subject to imprisonment, etc., should be construed as declaring not only against conspiracies to commit offenses, but also to conspiracies to defraud the United States, and to punish such conspiracies when supplemented by an overt act, though the wrong has not become effectual in its purpose.

**2. SAME—SUBSEQUENT RIGHTS—CREATION.**

Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], prohibiting and providing for the punishment of conspiracies to defraud the United States, applies with equal force to rights of the United States created subsequent to its passage, as well as those previously existing.

**3. SAME—CONSPIRACY TO DEFRAUD.**

The term "defraud," as used in Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], prohibiting and providing for the punishment of conspiracies to defraud the United States in any manner whatsoever on the doing of any act, by any of the conspirators, intended to effect the object of the conspiracy, should not be construed as limited only to frauds respecting property rights, but to include the deprivation of a right by deception or artifice.

**4. SAME.**

Defendant H., desiring to procure appointment as a letter carrier, a position in the classified civil service of the United States, unlawfully agreed with defendant C. that the latter should falsely impersonate H. at a civil service examination, and do all acts required by the examiners, and sign H.'s name to the examination papers to be delivered to C. for examination while he should impersonate H. C., in pursuance of such conspiracy, gained entrance to the examination, and falsely signed H.'s name to a declaration sheet which was required to be in the handwriting and on the honor of the applicant. *Held*, that such facts constituted a conspiracy to defraud the United States, prohibited by Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676].

130 F.—1

In Error to the District Court of the United States for the District of Massachusetts.

For opinion below, see 122 Fed. 738.

Heman W. Chaplin and Henry W. Dunn, for plaintiffs in error.

Henry P. Moulton, U. S. Atty., and William H. Lewis, Asst. U. S. Atty.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This case, novel in its character and aspects, has been argued with marked ability and clearness on both sides. The statement of the case appearing in the record sufficiently presents the general situation to enable us to consider the questions involved under the assignment of errors. It is as follows:

"The indictment is for conspiracy against the United States, and sets forth that Hughes, desiring to procure an appointment as letter carrier, a position in the classified civil service of the United States, and for the purpose of procuring the placing of his name on the list of persons eligible to appointment as letter carriers, and for the purpose of defrauding the United States, unlawfully agreed with Curley that the defendant Curley should falsely impersonate Hughes at a civil service examination, and do all acts required by the board of examiners, and sign the name of Hughes to such examination papers as should be delivered to Curley for examination while he should personate said Hughes; that Curley, in pursuance of said conspiracy, did falsely and unlawfully gain entrance to an examination, and, for the purpose of defrauding the United States, did falsely make a certain writing known as a 'Declaration Sheet.' There are also allegations of presenting false papers to an officer of the United States.

"The indictment contains three counts: The first, a conspiracy to defraud the United States, under section 5440, Rev. St. [U. S. Comp. St. 1901, p. 3676]; the second, a conspiracy to commit an offense against the United States, to wit, an offense set out in section 5418, Rev. St. [U. S. Comp. St. 1901, p. 3666], to falsely make a writing for the purpose of defrauding the United States; the third, a conspiracy to commit an offense against the United States, the offense being under section 5418, Rev. St., to wit, to present a false writing to an officer of the United States."

The various counts of the indictment set out with particularity the object of the conspiracy, the means employed, and the acts done in furtherance thereof. The first count also sets out verbatim the application for examination, the regulation vouchers, three in number, the answers of which are required to be in the handwriting of the voucher, all of which purport to be signed by Hughes; and the second and third counts set out what is called the 'Declaration Sheet,' which purports in its phraseology and signature to be in the handwriting and upon the honor of Hughes, such examination papers being originally supplied, as is understood, by the government, and show some of the precautionary regulations of the civil service department of the government, designed for the purpose of ascertaining the qualifications of applicants for official position in the Post Office Department.

The case first came up for consideration before Judge Brown in the District Court upon general demurrer, wherein the point was taken that neither count of the indictment set forth an offense against the laws of the United States. The demurrer was overruled, and the defendants excepted. The case was subsequently tried before Judge

Lowell and a jury, the defendants were convicted, and after sentence the case was brought to this court by writ of error.

The assignments of error are based upon exceptions duly taken, and are against alleged error in overruling the demurrer to the various counts, and to alleged error upon the subsequent trial in refusing to grant the request for a ruling to the jury that there was no evidence to warrant a verdict of guilty, for the reason that the facts alleged and in evidence set forth and constitute no crime against the United States, and alleged error in refusing to rule that neither count of the indictment charged an indictable offense, for the reason that the facts alleged and in evidence set forth and constitute no crime against the United States.

No point was taken at the trial that the proofs did not sustain the allegations of the indictment, or that the elements of the wrong complained of were not described with sufficient certainty and particularity to bring the indictment within the rule (United States v. Cruikshank et al., 92 U. S. 542, 558, 23 L. Ed. 588) which requires, where statutes use generic terms in declaring an offense, that the indictment must descend to particulars and describe the wrong. The sole or principal contention in that court was that the facts alleged did not constitute an offense within the meaning of the statute. And the principal contention of the defendants here is that the word "defraud," in its ordinary common-law acceptation, has reference to property and property rights, and the case largely, and perhaps wholly, depends upon the sense in which the word "defraud" was used in the statute under consideration. Was it intended to limit the scope of the statute to frauds upon property and property rights of the government, or was it intended to use the word in a broader sense, and for the protection of intangible rights, privileges, and functions of the government?

Speaking generally, the wrongs, whatever they are, contemplated by the second part of section 5440 [page 3676], under which the first count of the indictment was drawn, must relate to a purpose to defraud the government, and the false papers contemplated by section 5418 [page 3666] must have reference to a like purpose, and counts 2 and 3 are drawn upon that theory. This being so, the question of construction, raised under one section, in effect relates to the other, and the same is true as to the various counts, so far as we can see, and this is so because the purpose to defraud is an essential element of section 5418 and the second part of section 5440, as well as an essential feature of the various counts of the indictment.

Some stress has been laid upon the position, though it is not the main contention, that section 5440 of the statute should not be construed broadly in either of its aspects, but strictly. In support of this position it is suggested that, if construed broadly, it will include offenses with penalties different from those of the statute in question. The answer to that particular argument, quite likely, is that, while the purpose of statutory laws describing particular offenses in respect to the various ramifications of the government deal with completed wrongs, the purpose of the statutes in question was to deal with wrong in its incipient stages. The case In re Coy, 127 U. S. 731, 8 Sup. Ct. 1263, 32 L. Ed. 274, involved a count based upon the first part of section 5440, and alleged a conspiracy to commit an offense against the United States,

which related to the federal election laws—an offense which was punishable by law—and the indictment was sustained. The case of United States v. Sacia (D. C.) 2 Fed. 754, involved an allegation of a conspiracy to defraud the government of its rights under a will, and while the expression in that case, that the statute in question doubtless intended to meet the party to the fraud against the government on the very threshold of the perpetration of the crime, may be too broad, we do not doubt the soundness of the general reasoning that the statute intended to make it an offense for two or more persons to conspire for an unlawful purpose, and, the purpose existing and some act being done in furtherance of the object, that the penalty attaches before a consummation of the conspiracy.

Upon this general aspect we accept the statutes in question as having a comprehensive purpose, that of declaring against conspiracy to commit offenses as well as all kinds of conspiracies to defraud the United States, and to punish such conspiracies when supplemented by "any act to effect the object of the conspiracy," though the wrong has not become effectual in its purpose.

Although the statute is accepted broadly as general and comprehensive in its terms, it being a penal statute, when questions are raised as to its applicability to a particular situation, such questions must be determined under the rules of strict construction. It does not necessarily follow, however, that rules of strict construction would operate to limit the general terms or the general purposes of statutes of this character, but, under a particular description of an offense, the wrong complained of must be found to embrace the elements of a wrong clearly within the meaning of the general terms and the general purposes of the statutes.

Another point urged against the government is that, as the statute upon which the indictment was founded is older than the statute which creates the right in respect to which the government claims to have been defrauded, the particular kind of wrong charged could not have been contemplated by Congress, or intended as within the terms of the statute. This, to our minds, is the most weighty argument advanced by the defense. The answer to it, however, is that Congress intended to protect the government in its rights, privileges, operations, and functions against all fraudulent operations,—impositions upon its rights as well as properties, and to this end employed the most general terms and the broadest possible phraseology and declared that "if two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy," they shall be liable, etc. The statute thus clearly and expressly carries its provisions beyond wrongs which had been expressly declared to be offenses against the United States, and extends its provisions so as to embrace fraud in any manner for any purpose, and it would thus seem apparent that it was intended by Congress to carry the meaning of the statute beyond frauds in respect to property and property rights by declaring against fraud for any purpose, and in so doing it must have been intended not only to meet present wants and conditions of the law in respect to statutory offenses

and wrongs and frauds in relation to then existing conditions of administration, but to provide for future statutory offenses and frauds and wrongs growing out of new conditions of the future.

Such being the intention, it becomes a question whether the statute legally operates upon conditions or upon rights in respect to the administration of government subsequently created. It is said in Wheeler v. Philadelphia, 77 Pa. 338, 349, "legislation is intended not only to meet the wants of the present, but to provide for the future. It deals not with the past, but, in theory at least, anticipates needs of a state, healthy with a vigorous development." At least the argument that the offense was not within the terms of the statute would not hold good in respect to property, upon the ground that the property or property right about which the government or an individual was defrauded through conspiracy was acquired subsequent to a statute declaring it to be an offense to defraud the government or an individual of its property through a conspiracy for such purpose.

If this be true as to property and property rights, which we assume, and if the statute in question is broad enough under fair and reasonable construction to include rights, privileges, and functions in respect to governmental operations, it is difficult to see why, on the same principle, the statute does not apply itself to rights and privileges subsequently acquired or created in the course of legislative development in the interests of good government and improved service to the public. To illustrate, section 5451 of the same chapter of the federal statutes [U. S. Comp. St. 1901, p. 3680] makes it an offense to bribe any officer of the United States, or any person acting for or on behalf of the United States in any official function. It is probably not to be doubted that a statute of this kind would operate upon an offender who should bribe the incumbent of a federal office created subsequent to the time when section 5451 became a law, and, in conclusion upon this point, it must be said that no difference can be seen in principle between such a situation and the one under consideration.

As a general proposition, it is no objection to a statute that it is general in its terms. It may be sufficiently comprehensive to include a whole subject, or it may limit itself to a class of wrongs relating to a subject, or to a single phase of a given subject. Where a statute is general, the wrong complained of must be particularly described, so that it can be determined whether it is within the meaning of the statute. The point is taken, however, that, as the great body of wrongs and offenses against individuals and communities under our system of governments is left to be dealt with by the state governments, a federal statute drawn in general terms, if so general as to include offenses cognizable and punishable exclusively under the state governments, will not be operative, and that to be effective it must specify the particular class of acts upon which the federal statute is intended to operate, in order that it may be seen that they are within the scope or domain of federal legislation.

Assuming that such is the rule, in our view there is nothing in the sections of the statute under consideration which, under any reasonable construction, could include matters within the exclusive control of state governments. On the contrary, the sections in question only assume

to deal with wrongs against the federal government, and expressly describe conspiracies to commit offenses against the United States and conspiracies to defraud the United States, thus limiting the subject-matter of the legislation to matters concerning the federal government alone; and, while the language is general as to persons and conspiracies, the subject with which the statute assumes to deal limits its scope to conspiracies to commit offenses against the United States and conspiracies to defraud the United States. Criminal statutes of a state are general in the sense that they operate upon all members of the public and for the protection of all. The statute in question is general in the sense that it operates upon all in respect to subjects which concern the federal government alone, and for the protection of a single entity alone, that of the government. In speaking of the limited and special powers and purposes of the federal government, it was said by the Supreme Court in United States v. Cruikshank et al., 92 U. S. 542, 550, 23 L. Ed. 588, that "the government thus established and defined is to some extent a government of the states in their political capacity. It is also, for certain purposes, a government of the people. Its powers are limited in number, but not in degree. * * * It was erected for special purposes, and endowed with all the powers necessary for its own preservation and the accomplishment of the ends its people had in view." And in furtherance of the idea of its own protection and preservation, and to the end that it might administer itself for the purposes for which it was created, its courts were invested with exclusive jurisdiction "of all crimes and offences cognizable under the authority of the United States." Rev. St. § 711 [U. S. Comp. St. 1901, p. 577].

It is clearly enough within the power of the federal government to protect itself by proper legislation from crimes against its operations as well as from crimes against its existence.

We now come to the main contention of the defense, which is that the conspiracy to deceive, and the acts in furtherance thereof, related to a regulation or a requirement of a department of the government, and not to the property or the money of the government and, therefore, that the conspiracy to defraud or deceive is not of a kind contemplated by the sections of the statute under which the indictment was drawn, and thus it will be seen that the question, under the defendant's main contention, is whether the allegations of the indictment, supported by the facts, constitute an offense, and justify conviction, and that question depends largely upon the sense in which the word "defraud" was used in the sections of the statute under consideration. Speaking generally, when a word which was used in the old English statutes and in the common law, and which has been accepted as having a particular meaning in the comomn law, is used in a modern statute, it is ordinarily presumed that the word was used in its common-law sense, but this meaning may be enlarged or limited by its setting in a particular statute. Quite likely the word "defraud," as ordinarily used in the common law, and as used in English statutes and in the statutes of our states, enacted with the object of protecting property and property rights of communities and individuals, as well as of municipal governments, which exist largely for the purpose of

administering local financial affairs, has reference to frauds relating to money and property. If this is so, it is because the word is used in that sense, but it may well enough have a broader sense, and be used for a broader purpose.

The words "defraud" and "deceive," as defined by lexicographers, are nearly synonymous. "Defraud—to deprive of right, either by procuring something by deception or artifice, or by appropriating something wrongfully; to defeat or frustrate wrongfully." "Deceive—to mislead by false appearance or statement; to frustrate or disappoint."

It is a familiar rule that, when there is doubt about the purpose or the meaning of a statute, reference may always be had to the object which promoted legislation upon the subject; and though, under the view of the English courts, the title of an act is ordinarily not considered even under conditions of doubt, in this country the courts will look to the title where the meaning is doubtful, because, under the Constitution and the laws, the title is required to be expressed, and it is, therefore, thought not unwarrantable, under certain circumstances, to look to the title in determining the general purpose involved in the legislative intent. In respect to these particular statutes, however, the question cannot be influenced very substantially by the title, because section 5440 [page 3676], in the form in which it was originally enacted, was a part of an act entitled "An act to amend existing laws relating to internal revenue, and for other purposes," and what is now section 5418 [page 3666], in some substantial respects changed, though the general purpose is the same as originally enacted in 1866, was entitled "An act more effectually to provide for the punishment of certain crimes against the United States." In later revisions and compilations, however, these sections both became a part of chapter 5, tit. 70, under the title of "Crimes against the Operations of the Government." Still, quite aside from the title, in view of the history of the sections in question, we have no doubt of the general purpose of Congress to deal with offenses and wrongs which interfere with the operations of the government.

Under the rule which permits reference to the object of legislation, we may consider what was to be guarded against and who was to be protected, whether a private right, the public at large, the law, a government, or, in the English sense, the Crown, is the subject to be affected. Therefore the meaning of the word "defraud," when used in the common law or in a statute, is largely influenced by the sense in which it is used and by the subject to which it relates. A statute which, in general terms, has for its object the protection of the individual property rights of the members of the civic body, is one thing; a statute which has for its object the protection and welfare of the government alone, which exists for the purpose of administering itself in the interests of the public, might be quite another thing. The purpose might be broadly different in the two cases.

The personal rights and interests of individual members of society needing protection are one thing; the rights and interests of a government needing protection are quite another thing. This results from the fact that the rights and interests of individuals and governments are different. The individual rights relate to life, liberty, and the

pursuit of happiness, and the right to acquire and hold property. Governments are instituted for the purpose of protecting such individual rights, and they may protect themselves for that purpose and safeguard their own existence. Therefore the word "defraud" may have a different meaning in a statute for the protection of the government and its administration than when used in a statute designed for the protection of personal rights.

Manifestly, section 5440, in its general terms, contemplates wrongs other and beyond conspiracies to commit distinct statutory offenses against the United States, for, after declaring that if two or more persons conspire to commit any offense against the United States, it broadens the scope of the statute by saying, "or to defraud the United States in any manner or for any purpose," th covering frauds and deceptions which are not distinct offenses under federal laws.

It is, perhaps, not going too far to say that this section is generic in terms, generic in the sense of including in the first part of the section all conspiracies to commit offenses against the United States—therefore all of a class; and then, under an enlarged scope, embracing all conspiracies to defraud the United States in any manner or for any purpose. It is generic in the sense of including all conspiracies to defraud, thus covering the whole subject of fraudulent conspiracies against the government; conspiracies to wrong the government through fraud and deception not constituting an offense, as well as conspiracies to commit offenses against the government. But whether the statute, accurately speaking, is generic or not, it is manifest that the words "if two or more persons conspire * * * to defraud the United States in any manner or for any purpose" have a broader scope and a different sense than the words "if two or more persons conspire * * * to commit any offense against the United States," and, in considering whether a broader scope was intended under the second part of the section than under the first part thereof, the use of the word "either" should be noticed—conspiring "either" to commit any offense or to defraud in any manner or for any purpose.

In considering a statute enacted for the protection of the government, an entity which, in its right to render service to the people under wise and beneficent laws, holds property only as an incident of governing, and which declares it a penal offense to conspire to defraud the government for any purpose, we need not necessarily, we think, approach the question of the interpretation of the word "defraud" from the same standpoint from which the question would be considered if the word "defraud" were used in a state statute enacted for the protection of ordinary property rights of individuals constituting a state; and this is so for the reason that in the one instance the statute in its ordinary acceptation has reference to property and property rights alone, while in the other it has reference to a broader purpose, that of protecting the government in its administration under the law, as well as protecting the property of the government which it holds as an incident to the fundamental purpose for which the government was instituted.

A government does not exist in a personal sense, or as an entity in any primary sense, for the purpose of acquiring, protecting, and enjoying property. It exists primarily for the protection of the people

in their individual rights, and it holds property not primarily for the enjoyment of property accumulations, but as an incident to the purpose for which it exists—that of serving the people and protecting them in their rights. For instance, the property right in a post-office building is acquired and held as an incident to the service which the government is expected to perform and which it has a right to perform.

The limited sense in which the word "defraud" was sometimes used in the older statutes had reference to the protection of personal and individual property rights, as, for instance, "if any person shall defraud another," etc. That kind of legislation results, of course, from the purpose of the local government to protect the individual in his natural and fundamental right to enjoy liberty and acquire property. The fundamental idea of government is not to acquire and enjoy property, but to establish instrumentalities for protecting the people, not only in their individual and property rights, but in the enjoyment of the right and privilege of proper service in all departments of the government. The fundamental and chief function of the government is to administer protection and service to a body of people within its territorial limits. Its property is simply an incident of such administration.

The language of the statute in question is very broad—"if two persons shall conspire to defraud," etc. Now, it is, we think, not only reasonable, but the duty is upon us, in considering this statute, to have in mind the object of government in respect to a statute of this kind, as we would have in mind the object of a statute directing itself against wrongs destructive of individual property rights. The chief aim of government being that of protection and service, it may safeguard itself against conspiracies or combinations, or acts intended to impair its proper administration, or conspiracies to impair any of the functions of the government. It may declare it unlawful to combine for the purpose of doing any act which obstructs or interferes with the operations of government or any of its departments. The government may unquestionably safeguard itself against being defrauded out of its right to administer an intelligent and honest service in the interests of the people.

As a moral offense, defrauding the government of its right and its facilities for rendering a proper service to the people, that being the prime object for which it exists, cuts deeper than defrauding the government of a wheelbarrow, and it is unquestionably within the power of the government to protect itself against that kind of a fraud. The question here, therefore, is whether this statute was intended to accomplish that result, and upon that question we should take into consideration the purpose for which government exists. Under such an aspect it does not necessarily follow, as we have said, because the word "defraud" used in statutes for the protection of individual rights will be construed as having reference to property interests, that the word "defraud" as used in a statute intended for the protection of a government and its wholesome administration of its affairs in the interests of the great body of the people has reference solely to property and pecuniary interests.

The federal government has the right to require that the mail service shall be performed by honest and otherwise competent agents.

It has the right to devise and declare its own regulations and means for ascertaining who possess the requisite integrity and other reasonable qualifications. It has the right to protect itself against imposition in this respect. The government had the right to have its blanks used by the person who purported to use and sign them, and to have the answers made by the persons who purported to make them, and, under the circumstances disclosed by the indictment, the defendants conspired and combined to defraud and cheat the government in respect to such right, for the purpose of securing for a person who did not conform to the government regulations a position to which he was not entitled under a law which the government had created and which it was the duty and the right of the government to enforce.

It is an inherent and unquestionable right of the government to administer itself according to law, and, while all citizens have the right and are at liberty to become an instrument of the government under the rules and regulations established by law, they are not at liberty and have not the right to subvert the lawful purposes of the government through a conspiracy to attain government power and emolument by means of fraudulent acts calculated and intended to defraud and deceive the government in respect to its right to administer the mail service according to law. This results from the fundamental rule that the rights and liberties of a people may be regulated by law.

A government must administer itself through its agents or servants. It must be represented as to matters in the various departments by its agents. There is no single particular entity which can be said to be the government, to the exclusion of all other instrumentalities employed to effect the purposes for which the government exists. The government, in respect to its purposes, its rights, and its service, exists in a representative capacity, and in turn its agents, created to administer its purposes, its rights, and its service, are representatives of the government. Therefore conspiracy to practice a fraud, or a deception which amounts to a fraud, upon an agent or agents of the government, and doing acts in furtherance of such purpose in respect to property or rights that belong to the government, whereby the property or the rights of the government may be destroyed or impaired, is a fraudulent conspiracy within the meaning of the statute in question.

The general purpose of the legislation, as well as the general intent of the statute, was to protect the government from impositions through conspiracies to defraud or cheat. The purpose was broad enough, therefore, to include fraudulent conspiracies to injure the government in respect to its rights and privileges, as well as in respect to its property. State statutes for the protection of communities against wrong may be general in their terms, and may operate penally upon an offender, provided the facts alleged and proved constitute a wrong upon an individual member of the community which can fairly be said to be within the class or kind of wrongs against which it was intended to safeguard and protect the public. If this is true, as a general principle of criminal law applicable to state statutes enacted for the protection of individual members of a community in their property and rights, it is equally true of statutes for the protection of a government in respect to its rights, functions, and properties. Of course, this rule is

subject to the limitation that the wrong alleged must possess all the elements of the different kinds of wrongs against which a given statute was directed, as, for instance, if the statute declares against fraud, the offense alleged must have the element of fraud; if against polluting food and drink, the offense must relate to that; and, if a statute declares against a conspiracy to overthrow the government, the conspiracy and the act must relate to such purpose.

As has been said, the defendants in this case combined to cheat or deceive the agents of the government in respect to a service which it was the duty of the government to perform, and which it had the right to perform according to law. The regulations which were violated and subverted were requirements founded upon a law of Congress which authorized the civil service commissioners, under rules made by the President, to prescribe regulations for the admission of persons into the civil service of the United States. The regulations and the requirements, therefore, having reference in this particular case to the mail service, were founded upon law, and were such as the government had the right to enforce in connection with that department of the government. It is not our province to question the wisdom of the civil service law. Courts are bound to accept legislation, regularly enacted in the course of governmental development and authorized executive action thereunder, as based upon grounds of sound and wholesome public policy.

We have spoken of the popular acceptation of the word "defraud," and now as to its legal meaning. In Burdick v. Post, 12 Barb. 168, 186, it is said to "defraud" is to withhold from another that which is justly due him, or deprive him of a right by deception or artifice, and Bouvier adopts this definition. Thus the word in legal acceptation refers to rights, as well as to property and money. Moreover, when the word "defraud" is used in connection with the government and the law itself, it naturally and necessarily has a broader and a different meaning than when used in connection with personal rights or in connection with individual rights of property. To illustrate, it is said in The William King, 2 Wheat. 148, 153, 4 L. Ed. 206, that "whatever is done in fraud of a law is done in violation of it" and in that case a vessel, intending to go to a foreign port, complying with the requisition necessary to obtain a clearance for a voyage coastwise, was treated as employing a device in fraud of the law, by which she eluded the force that would have otherwise prevented her departure from port. Again, in Lee v. Lee, 8 Pet. 44, 8 L. Ed. 860, which involved a question of jurisdiction in a slave case, where the question of jurisdiction depended upon place of citizenship, and as to that there was a question whether there had been an attempt to evade the law, after referring approvingly to the expression of the court in The William King, to which we have referred, and in speaking of the alleged device and intent, it is said: "Suppose the hiring had been for one week or one day, would any one doubt that it would have been done with a view to take the case out of the law of 1796, and would have been a fraud upon the law?" In United States v. Fox, 95 U. S. 670, 672, 24 L. Ed. 538, it is said that "any act committed with a view of evading the legislation of Congress passed in the execution of any of its powers, or of fraud-

ulently securing the benefit of such legislation, may properly be made an offense against the United States." These cases are not cited as having a direct bearing upon the construction of the statute in question but as showing that the word "defraud" has a different meaning when used in connection with the government and the law than when used with reference to fraudulent interference with individual property rights, and that the law, and its administration through the instrumentalities of the government, may be defrauded.

United States v. Bunting (D. C.) 82 Fed. 883, and Palmer v. Colladay, 18 App. D. C. 426, are cases which discuss the meaning of the word "defraud" as used in section 5440, and we are unable to see any defect in the reasoning of those cases.

The case of United States v. Hirsch, 100 U. S. 33, 35, 25 L. Ed. 539, is urged by the defendants as one in which the statute was limited, through construction, to cases of cheating the government in respect to property and money. We do not take that view of that case, for it must be seen that the court was not there considering the specific kind of fraud before us; and while the court, in illustrating the case before it, and in speaking of the frauds against the United States mentioned in the statute, said, "It may be against the coin, or consist in cheating the government of its land or other property," it was also said, in the course of the opinion, that "the fraud mentioned is any fraud against them," and the section is referred to as one which "enacts in the most general terms a law against conspiracies"; and the view, therefore, that the court intended to limit the statute to frauds in respect to the moneys or property of the government, cannot be accepted as sound.

The case of United States v. Thompson (C. C.) 29 Fed. 26, is also urged as having the same limitation, but it will be seen in that case that, while the court was not dealing with the question presented here, it referred to the statute as including "every conceivable case or conspiracy to defraud the United States; that is, to deprive or divest it of any property, money or 'thing,' otherwise than a law requires or allows," thus carrying its meaning beyond property and money.

Cross v. North Carolina, 132 U. S. 131, 10 Sup. Ct. 47, 33 L. Ed. 287, is another case relied upon by the defense, but it does not seem to be in point, for the reason that it turned upon the idea that the contemplated fraud was upon a bank, and that the act complained of could not be said to have been done for the purpose of defrauding the United States; that, while it might be a fraud upon a bank or upon its stockholders, it was not in itself, within the meaning of section 5418, a fraud upon the United States.

Moreover, and in respect to the other phase of the case, if it were to be assumed, contrary to our view of the meaning of the sections in question, that the word "defraud" was used therein in the limited sense in which it has, under certain circumstances, been accepted in the common law, the English statutes, and the statutes of the states, as having reference to property and property rights, it is still difficult to see why the object sought to be attained in the wrong complained of in this case does not come within such acceptation. The purpose of the conspiracy here was not to secure an opportunity for a qualified person to discharge gratuitously the duties of an office under the federal govern-

ment, but through fraud and deception to avoid the requirements of the law in respect to qualifications, and to secure, without such examination as the law and governmental regulations require, the privileges, immunities, and emoluments of an office for the duties of which the person was not qualified, the chief incentive and leading idea, of course, being to secure the statutory pay intended by the government as compensation for an official answering the requirements and qualifications of the law; and in this sense surely the object of the conspiracy had reference to money and property of the government. It is difficult to see why a conspiracy to wrongfully secure a statutory salary from the government, through fraudulent impersonation, stands differently than a conspiracy to fraudulently procure a pension from the government, like that in United States v. Adler (D. C.) 49 Fed. 736.

It is unnecessary to take up the consideration of section 5418, and counts 2 and 3 based thereon, as involving a distinct and different proposition from that involved in the general discussion of section 5440, for the reason, that count 1 being based upon a conspiracy to defraud the government, and upon the idea of certain acts in furtherance thereof, and counts 2 and 3 being founded upon the idea of the preparation and use of certain false papers for the purpose of defrauding the government, the two sections and the various counts present the same question as to the meaning of the word "defraud," and any view applicable to either section or any of the counts in this respect is equally applicable to all.

If these sections of the statutes are impotent to deal with fraud and deception upon the general government like that involved in this case, it is difficult to see upon what principle or upon what interpretation they could deal with fraud and deception in respect to an office of greater power and responsibility, or with fraud and deception upon government rights and regulations more vital to an honest and intelligent administration of its service to the people.

The judgment of the District Court is affirmed.