# UNITED STATES

## v.

# RICARDO ESCOBAR.

San Juan, Criminal, No. 643.

### VIOLATION OF PRESIDENT'S PROCLAMATION.

Joint Resolution.

1. A joint resolution of Congress authorizing the President to prohibit by proclamation the exportation of war material from ports of the United States has virtually the same effect as a statute.

Criminal Law.

2. If Congress has not declared an action a crime, the courts cannot do so.

Criminal Law.

3. A joint resolution of Congress authorizing the President to prohibit by proclamation the exportation of war material from ports of the United States, but which does not make the exportation thereof a crime nor fix a penalty, simply authorizes the President to prohibit the exportation, and one acting contrary to the proclamation does not commit a crime.

Criminal Law—Conspiracy.

4. The exportation of war materials from ports of the United

United States v. Escobar.

States contrary to the proclamation of the President does not constitute a crime, and therefore there cannot be a conspiracy to commit the said crime or offense.

Criminal Law—Strict Construction.

> 5. There can be no intendment in support of the meaning of a criminal statute, as penal laws are strictly construed.

Opinion filed December 6, 1916.

---

*Mr. Miles M. Martin,* District Attorney, for United States.

*Mr. H. G. Molina* for defendant.

HAMILTON, Judge, delivered the following opinion:

This cause comes up upon a demurrer filed this day by leave of court to the indictment in this case, charging defendant with the offense of violating § 37 of the Criminal Code, in that, on May 27, 1916, he conspired with other parties, who were not arrested, to transport from San Juan into Santo Domingo a large quantity of war materials, contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States. The statute in question is a joint resolution of April 22, 1898, authorizing the President to prohibit the exportation of coal and other war material from the United States. The President, to wit, Mr. Roosevelt, by proclamation of 1905, prohibited the exportation of ammunition and the like from the United States to Santo Domingo, and the act set out in the indictment is the one supposed to constitute the offense. The joint resolution is as follows:

"Resolved by the Senate and House of Representatives of

United States v. Escobar.

the United States of America in Congress assembled, That the President is hereby authorized, in his discretion, and with such limitations and exceptions as shall seem to him expedient, to prohibit the export of coal or other material used in war from any seaport of the United States until otherwise ordered by the President or by Congress.

"Approved, April 22, 1898." 30 Stat. at L. 739.

The proclamation is as follows:

By the President of the United States of America.—A Proclamation.

Whereas, by a joint resolution, approved April 22, 1898, entitled, "Joint Resolution to Prohibit the Export of Coal or Other Material Used in War from Any Seaport of the United States," the President is authorized, in his discretion, and with such limitations and exceptions as shall seem to him expedient, to prohibit the export of coal or other material used in war from any seaport of the United States until otherwise ordered by the President or by Congress;

Now, therefore, I, Theodore Roosevelt, President of the United States of America, for good and sufficient reasons unto me appearing, and by virtue of the authority conferred upon me by the said joint resolution, do hereby declare and proclaim that the export of arms, ammunition, and munitions of war of every kind, from any port in the United States or in Porto Rico, to any port in the Dominican Republic, is prohibited, without limitation or exception, from and after the date of this my proclamation until otherwise ordered by the President or by Congress.

And I do hereby enjoin all good citizens of the United States

United States v. Escobar.

and of Porto Rico, and all persons residing or being within the territory or jurisdiction thereof, to be governed accordingly.

In witness whereof, I have hereunto set my hand and caused the seal of the United States to be affixed.

Done at the city of Washington this 14th day of October in the year of our Lord one thousand nine hundred and five, and of the Independence of the United States of America the one hundred and thirtieth.

    (Seal)                              Theodore Roosevelt.

By the President:

Elihu Root, Secretary of State.

34 Stat. at L. 3183.


1. The question arises as to whether the fact that the alleged offense comes under a joint resolution, instead of by statute, is material. It would seem, however, that the difference between a joint resolution and a statute is not material for present purposes. Under the Constitution "every order, resolution, or vote to which the concurrence of the Senate and House of Representatives may be necessary, . . . shall be presented to the President of the United States; and before the same shall take effect shall be approved by him." Constitution, art. 1, § 7. This course was followed in the present matter. The practice is to publish joint resolutions in the same volume and in the same manner as the Statutes at Large of the United States. Instances may be found in almost every volume. One of the most famous instances of joint resolution was that of July 7, 1898, whereby the Hawaiian Islands were annexed. This not only kept in force many existing penal laws of those Islands, but extended to them the Chinese Immigration Acts, with all their

### United States v. Escobar.

provisions as to crimes and penalties. 30 Stat. at L. 750. This resolution was approved by the President, and it has never been supposed that it was unconstitutional. There was an even more elaborate joint resolution annexing Texas on March 1, 1845, 5 Stat. at L. 797.

2. The argument is made that if the demurrer is sustained the lives of American citizens and soldiers in Santo Domingo may be imperiled because this court will thereby decide that it is not criminal to export arms and ammunition from the United States, and that these may be used against such American citizens and soldiers. This, however, is a question for Congress and not for the courts. If Congress does not see proper to declare an action a crime, the courts cannot do so. The Constitution preserves the differentiation between legislative and judicial powers, which this court would not transgress even if it could do so. In point of fact, however, the customhouses, coast guard, and other machinery of the government, may be invoked to make the proclamation effective; and, if necessary, the courts will grant all proper writs of injunction, prohibition, or of any other character. The question raised by the demurrer must be settled on purely legal principles.

3. The demurrer raises the point that no crime or offense is created by the joint resolution and proclamation of the President. That there is a prohibition of export of munitions is conceded, somewhat as if there was an injunction against such export; but it is contended that the matter stops with the prohibition, that whether the government is or is not successful in prohibiting the export, it can do nothing against the person who violates the proclamation. It is undoubtedly true that a crime must be created by statute, indeed the indictment itself

IX. Porto Rico.—17.

United States v. Escobar.

professes to be based upon a statute. The President not only has not attempted to create an offense by the terms of his proclamation, but could not if he wished to. Under the Federal Constitution, legislation must be effected by Congress and Congress alone.

The words "crime" and "offense" are almost synonymous, "offense" being often used of the lighter grades of crime; but to constitute either the one or the other a statute has to fix a penalty, whether it be fine or imprisonment or both. The joint resolution in this case affixes no penalty whatever. It may be questionable whether Congress could leave it to the President to declare crimes, as this might be a delegation of legislative power. However, Congress has not undertaken to do any such thing. If a forfeiture is declared, this is enough. The conspiracy statute now under consideration, Criminal Code, § 37, re-enacted, in effect, Rev. Stat. § 5440, Comp. Stat. 1916, § 10,201, will attach and make conspiracy to commit it a crime. It is not material whether the penalty affixed to the conspiracy statute is greater or smaller than that attached to the offense for whose commission the defendant is alleged to have conspired. Conspiracy is an offense in itself. Curley v. United States, 64 C. C. A. 369, 130 Fed. 1.

4. The particular offense charged in this indictment is conspiracy to commit a crime. The conspiracy charge is brought under § 37 of the Federal Penal Code, substantially § 5440 of the Revised Statutes. The offense which the conspirators intended to commit is alleged to be the exportation of ammunition to Santo Domingo. As seen above, there is no express statute making such exportation an offense, but it is alleged that, as the exportation is forbidden by law, it is illegal, and therefore

United States v. Escobar.

an offense. It is doubtless true that § 37 of the Penal Code denounces two different offenses; to wit, a conspiracy to commit specific crime and a conspiracy to defraud the government. Curley v. United States, supra; United States v. Morse, 161 Fed. 429, 436. The latter provision has been broadly construed so as to aid its rather general intent. United States v. Haas, 163 Fed. 908. The other branch of § 37, however, stands upon a different footing. The conspiracy must be in connection with some definite crime. There is no doubt that a contempt of court is illegal, and nevertheless it has been held that this is not a crime or offense within the view of the criminal law. In Re Terry, 37 Fed. 649. But the contention is that § 37 will cover a conspiracy to do anything to which a penalty is attached by statute as distinguished from an order of court. It is true that the punishment for the conspiracy may be greater than the punishment of the offense whose commission is planned by the conspirators. United States v. Stevenson, 215 U. S. 190, 200, 54 L. ed. 153, 157, 30 Sup. Ct. Rep. 35. It has been held that a conspiracy to commit an act to which a penalty is annexed by the Immigration Statute properly comes under § 37 of the Penal Code, even though a civil suit may lie to recover that penalty. United States v. Tsokas, 163 Fed. 129, 131. In the case at bar it is urged that the munitions exported may be confiscated by the United States, and that therefore a conspiracy to export them is a conspiracy to commit an act to which a penalty is affixed. This is, to say the least, doubtful. A forfeiture of goods, somewhat like the forfeiture of contraband in time of war, does not carry with it any personal penalty against the owner. He simply loses what he has embarked in an enterprise, without becoming liable to any personal punishment.

This view would seem to extend § 37 further than Congress has provided. In the Tsokas Case, Congress provided that the act complained of was a misdemeanor, although it did not affix a penalty. In the case at bar Congress has not called the act an offense in so many words.

5. The requirement of all legislation is that it be certain so as to be understood. Particularly is this true of criminal laws. There can be no intendment in support of the meaning of a criminal statute. It must denounce a crime in some definite way, or it is void for uncertainty. There is more liberality in construing acts of Congress than acts of state legislatures, because the Constitution of the United States is more general in its terms than many of the recent state Constitutions. An act of Congress of February 25, 1871, Rev. Stat. §§ 8–11, Comp. Stat. 1916, §§ 8–11, lays down some general rules as to the form, but beyond the general expression in art. 1, § 1, of the Constitution, that "all legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives," and the prohibitions in the first eight amendments, there are few detailed regulations found in the Constitution. Penal statutes must be strictly construed.

It follows that the demurrer must be sustained, and it is so ordered.