## HORWITZ v. UNITED STATES.

### LIPSITT v. SAME.

(Circuit Court of Appeals, First Circuit. May 5, 1925.)

Nos. 1672, 1673.

1. **Conspiracy ⚖➜23—Success or failure of conspiracy to defraud is immaterial in prosecution therefor.**

In prosecution for conspiracy to defraud the United States, success or failure of conspiracy is immaterial.

2. **Conspiracy ⚖➜33 — Intoxicating liquor is merchandise, and conspiracy to avoid statutory provisions relating to manifest, etc., would be conspiracy to defraud United States.**

Under Rev. St. § 2766 (Comp. St. § 5785), intoxicating liquor is still merchandise, and can only be imported under provisions of Rev. St. §§ 2770, 2806–2809, 2872, 2884 (sections 5466, 5503–5506, 5576), as to manifest, ports of entry, right of inspection, etc., and for permits under National Prohibition Act, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa) and Regulations of Treasury Department, Prohibition Unit, §§ 1630, 1631, 1637 et passim; and conspiracy to avoid any of these provisions by smuggling liquor into United States would be conspiracy to defraud United States.

3. **Conspiracy ⚖➜47—Evidence held to warrant finding that cablegrams constituted overt acts committed in district in conspiracy to defraud government.**

Evidence *held* to warrant finding that cablegrams constituted overt acts committed in district of prosecution for conspiracy to defraud United States by smuggling liquor into country.

4. **Criminal law ⚖➜970(1)—Presence of special assistant United States attorney in grand jury room held not ground for arrest of judgment.**

Motion to arrest judgment after verdict, on ground that special assistant United States attorney had improperly been allowed in grand jury room during presentation of evidence leading to indictment, was properly denied, where he had been directed by letter from Attorney General to conduct grand jury proceedings, and district attorney directed him to assist in the presentation of evidence in particular case, though Attorney General's letter did not designate particular case.

5. **Criminal law ⚖➜972—Judgment will be arrested after conviction only for matter of record rendering judgment erroneous.**

General rule is that judgment will be arrested after conviction only for matter of record rendering judgment erroneous, evidence being no part of record for such purpose.

In Error to the District Court of the United States for the District of Massachusetts; Julian W. Mack, Judge.

Israel Horwitz and Joseph Lipsitt were convicted of conspiring to defraud United States by smuggling intoxicating liquors in-

5 F.(2d)—9

to the United States, and they bring error. Affirmed.

Leo A. Rogers, of Boston, Mass. (Daniel A. Shea, of Boston, Mass., on the brief), for plaintiffs in error.

George R. Farnum, Asst. U. S. Atty., of Boston, Mass. (Harold P. Williams, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. On December 16, 1921, Israel Horwitz, Joseph M. Barbosa, Joseph Lipsitt, Roy Texeira, William S. Senior, and A. B. Cotnoir were indicted for conspiring at New Bedford to defraud the United States, by causing "to be clandestinely brought into the United States," by the schooner Romance, from foreign ports, large quantities of intoxicating liquor of foreign manufacture, planning to conceal the liquor aboard the Romance "with the view and purpose of depriving" the government and its officers "of the right to inspect said liquors for the purpose of ascertaining whether the said liquors should be landed into the United States."

The indictment then alleges various purchases of liquor in foreign ports by Barbosa, Texeira, and Horwitz. As overt acts, it is alleged that Horwitz, on October 28, 1921, sent a cablegram to Lipsitt at New Bedford, relative to this intoxicating liquor, and that Lipsitt at New Bedford, on the same date, received said cablegram and also sent a cablegram to Horwitz at Bermuda "relative to said intoxicating liquor which was then and there on board the said vessel called Romance." Also that Cotnoir, on November 11, 1921, at New Bedford, made arrangements with Lipsitt to furnish boats to meet the schooner on arrival; and that on November 19, 1921, Senior caused the schooner carrying intoxicating liquor to enter the New Bedford harbor for the purpose of landing said liquor in the United States.

At the trial before Circuit Judge Mack in August, 1922, a verdict of guilty was returned against defendants Horwitz, Lipsitt, Senior, and Texeira, and of not guilty against the defendants Barbosa and Cotnoir.

On October, 1922, the United States attorney entered a nolle prosequi against Senior, on the ground that he had been "of material assistance to the government in the investigation and trial of this case." Texeira was sentenced to pay a fine of $100, and Horwitz and Lipsitt were sentenced to pay

fines of $500 each and to be imprisoned in the House of Correction for three months each. Horwitz and Lipsitt have brought the case to this court on writs of error.

The record is bulky, containing the evidence, somewhat abbreviated, of nineteen witnesses, including the six defendants, as well, by reference, of a very large number of exhibits. Not unnaturally, the evidence was markedly conflicting, fully justifying the observation of the trial court in his charge to the jury: "It is perfectly clear, I take it, that there has been some pretty tall lying done in this case."

The case was, in essence, one of fact for the jury, in which credibility played a large part. It was submitted to the jury under instructions, admittedly containing all legally necessary precautions as to the weight to be given to the evidence of an accomplice. Senior, captain of the Romance, testified for the government.

In outline: There was evidence tending to show that Capt. Senior was a one-third owner of the Romance; that the other two-thirds belonged to the Insular Trading Company, a group of Portuguese and American citizens, of which the defendants Texeira and Barbosa were respectively president and treasurer; that in early July, 1921, an agreement, or conspiracy, was entered into at New Bedford, pursuant to which, on July 14, 1921, the Romance cleared for Cape Verde Islands under Senior's command, with Texeira on board listed as a messman; that at the Islands, Senior met the defendants Barbosa, Cotnoir, and Horwitz; that these three were signed on as members of the crew at a wage of $5 a month, which was in fact not paid; that Lipsitt, a lawyer and a brother-in-law of Horwitz, stayed in New Bedford; that substantial quantities of liquor were bought in French and Portuguese possessions; that cablegrams were sent by Horwitz to Lipsitt in New Bedford; that at Brava, Horwitz told Senior that he (Horwitz) was to arrange to send Cotnoir by steamship from Bermuda to New Bedford; that he (Horwitz) had arranged with Lipsitt to have a boat come out to meet the Romance off No Man's Buoy on Friday, November 18; that the schooner arrived off No Man's Buoy at 2 a. m., Saturday, November 19; that the weather was then foggy; that during the morning, Horwitz said the boat which was to meet them ought to be out at any time; that the crew, under Senior's direction, started to get the cargo of whisky and liquor on deck; that about 2 p. m. a revenue cutter came in sight, necessitating a change of program; that in the manifest which had previously been made out, showing no liquor, Senior then inserted an item showing the liquor; that about 7 or 8 o'clock in the evening, while the revenue cutter was bringing the Romance in, Capt. Senior was hailed by some one in a motor-boat, whose voice he recognized as that of the defendant Cotnoir; that other evidence indicated that this was the boat sent pursuant to the plan for landing the liquor as originally made.

[1] The gist of the alleged crime is, of course, the conspiracy to defraud; its success or failure is immaterial. United States v. Rabinowich, 238 U. S. 78, 86, 35 S. Ct. 682, 59 L. Ed. 1211.

[2] Defendant's fundamental contention is that there was no evidence for the jury of a conspiracy to defraud the United States. The argument is that, as R. S. § 3082 (Comp. St. § 5785), was held by a majority of this court in Bruno v. United States (C. C. A.) 289 F. 649, inapplicable to liquor smuggling, the United States could not be thus defrauded by such smuggling, pending reinstatement of section 3082 by the Supplemental Prohibition Act of November 23, 1921, 42 Sts. p. 222, § 5 (Comp. St. Ann. Supp. 1923, § 10138⅘c). This contention is unsound. Section 3082 was held inapplicable to liquor smuggling simply on the ground that the penalty therein provided for that offense was greater than the penalty for the same offense provided in the National Prohibition Act, title 2, § 29 (Comp. St. Ann. Supp. 1923, § 10138½p). But this court did not hold that all the other provisions, both of the old customs law and of the new prohibition act, were not applicable to importations of intoxicating liquor. Liquor is still merchandise. R. S. § 2766 (Comp. St. § 5462) United States v. Santini (C. C. A.) 279 F. 534. It can only be imported under the provisions as to manifest, ports of entry, right of inspection, etc., found in the old customs law, R. S. §§ 2770, 2806–2809, 2872, 2884 (Comp. St. §§ 5466, 5503–5506, 5576); and for permits found in the National Prohibition Act, title 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa), and Regulations of the Treasury Department, Prohibition Unit, §§ 1630, 1631, 1637 et passim. A conspiracy to avoid any of these applicable provisions would be a conspiracy to defraud the United States. Cf. Curley v. United States, 130 F. 1, 64 C. C. A. 369.

[3] The defendants also contend that the evidence failed to establish any of the overt acts alleged within this district. Plainly this is not so. The evidence warranted the jury

in finding that Lipsitt, in New Bedford, received from Horwitz a cablegram relative to the intoxicating liquor, and that Lipsitt, in New Bedford, sent a cablegram to Horwitz at Bermuda. It is true that the cablegrams do not in express terms refer to the liquor. Horwitz' first cablegram sent from Dominica, October 28, 1921, to Lipsitt, reads:

"Do you need Barboza. Rush answer. Two days rough trip."

And Lipsitt's answer sent from New Bedford on the same day reads:

"Send Barboza by steamer from Bermuda."

But these cablegrams, read in connection with the evidence, fully warranted, perhaps required, the jury to find that they were sent and received as communications relative to the intended unlawful landing of the liquor at or near New Bedford. Barbosa and Cotnoir both left the Romance at Bermuda and came back to New York by steamship, and thence to New Bedford, thus arriving a day or two before the Romance. The jury were not required to believe their testimony as to their reasons for choosing this method of reaching New Bedford ahead of the Romance.

It is not necessary to refer to many other parts of the record which might well have led the jury to conclude that these cablegrams had no purpose except to effectuate the conspiracy entered into the previous July. Burton v. United States, 202 U. S. 344, 373, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Humes v. United States, 170 U. S. 210, 212, 18 S. Ct. 602, 42 L. Ed. 1011. We need not consider whether there was evidence for the jury of other overt acts within this district.

[4] After the verdict, the defendants Horwitz and Lipsitt moved that the judgment be arrested, on the ground that a special assistant United States attorney had improperly or illegally been allowed in the grand jury room during the presentation of the evidence which led to the indictment.

It appeared that, under date of April 22, 1921, the special assistant United States attorney received from the Attorney General an appointment, the material parts of which are as follows:

"You are hereby appointed a special assistant to the United States attorney, district of Massachusetts, in the following cases: (Then follows a list of six cases, not including the cases now at bar) and in such other cases and matters as may be assigned to you. You are hereby authorized and directed to conduct grand jury proceedings in the district of Massachusetts in connection with these cases and matters, including such as may be assigned to you hereafter. * * * "

It is agreed that this special assistant United States attorney appeared before the grand jury in this case, and had no authority other than this letter of appointment directly from the Attorney General, but did have oral direction from the United States attorney for this district to appear before the grand jury and assist in the presentation of the evidence against the said defendants.

In the District Court, the motion was denied, on the ground that the letter of the Attorney General, supplemented by the oral direction of the United States attorney, was sufficient to authorize the presence of the special assistant United States attorney in the grand jury room, and that his presence did not, as matter of law, invalidate the indictment.

The exact question now sought to be raised by the plaintiffs in error was before Judge Morton on motion to quash, seasonably and properly made, in United States v. Martins (D. C.) 288 F. 991, who ruled as did Judge Mack, in the case at bar.

This precise question seems not to have been determined by the Supreme Court or by any Court of Appeals. On this record, it is unnecessary to decide whether, if the question had arisen on a motion to quash, the indictment would have been held invalid.

[5] Plainly, the general rule is that judgment in a criminal case will, after conviction, be arrested only for matter appearing of record which would render the judgment, if entered, erroneous; the evidence being no part of the record for such purpose. The motion for arrest was properly denied. Compare May v. United States, 236 F. 495, 500, 149 C. C. A. 547, and cases cited; United States v. Maxey (D. C.) 200 F. 997; United States v. Rosenthal (C. C.) 121 F. 862; United States v. Heinze (C. C.) 177 F. 770.

In each case the judgment of the District Court is affirmed.