### UNITED STATES v. GRADWELL et al.

(District Court, D. Rhode Island.  July 28, 1916.)

1. CONSPIRACY ⬤⟾33—DEFRAUDING GOVERNMENT—CORRUPTING ELECTION.
Criminal Code (Act March 4, 1909, c. 321) § 37, 35 Stat. 1096 (Comp. St. 1913, § 10201), making it an offense to conspire "to defraud the United States in any manner or for any purpose," is not intended for protection against corruption of a state election at which a Representative in Congress is chosen, as well as for protection of operations of the organized government.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. ⬤⟾33.]

2. INDICTMENT AND INFORMATION ⬤⟾71—CERTAINTY.
Even if it be a crime, under Criminal Code, § 37, to conspire to corrupt a state election for Representative in Congress, held, the indictment was so vague, uncertain, insufficient, and duplicitous in its allegations as not to sufficiently apprise defendants of the nature of the charge for preparation of defense.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 144, 174, 193, 194; Dec. Dig. ⬤⟾71.]

⬤⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Criminal prosecution by the United States against Matthew T. Gradwell and others. Demurrers to indictment sustained.

See, also, 227 Fed. 243.

Harvey A. Baker, U. S. Atty., of Providence, R. I. (William H. Cainfield, Asst. U. S. Atty., of Providence, R. I., on the brief), for the United States.

Barney, Lee & McCanna, of Providence, R. I., for defendants Gradwell, Mathewson, Warner, and Rathbun.

Charles A. Walsh, of Providence, R. I., for defendants Keach, Colvin, Kresge, and Whitman.

Wilson, Gardner & Churchill, of Providence, R. I., for defendants Dodge and Hudson.

James E. Dooley, of Johnston, R. I., for defendant Carpenter.

Wayne H. Whitman, of Providence, R. I., for defendants Carr and Franklin.

BROWN, District Judge. [1] This is an indictment under section 37 of the Criminal Code, charging a conspiracy to defraud the United States by corrupting a general election at which a Representative in Congress was voted for and elected.

The fundamental question is whether this conspiracy statute is to be so broadly construed as to comprehend a conspiracy of this character.

It is not contended that the conspiracy was to commit any offense against the United States, but the indictment rests upon the words "to defraud the United States in any manner or for any purpose." It is well settled that these words are broad enough to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of the government. U. S. v. Barnow, 239 U. S. 74, 79, 36 Sup. Ct. 19, 60 L. Ed. 155; Haas v. Henkel, 216 U. S. 462, 479, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112; U. S. v. Plyler, 222 U. S. 15, 32 Sup. Ct. 6, 56 L. Ed. 70; U. S. v. Curley (D. C.) 122 Fed. 738, Id., 130 Fed. 1, 64 C. C. A. 369. But these and all cases cited, except one, relate to functions of the organized government, and not to a step in the organization of the government.

But a single case has been cited in which the statute has been extended to include fraud in the election of a member of Congress. U. S. v. Aczel et al. (D. C.) 219 Fed. 917, 921, 923, 934, 938. The learned judge, after a consideration of U. S. v. Curley, 130 Fed. 1, 64 C. C. A. 369, Id. (C. C.) 122 Fed. 738, and Haas v. Henkel, 216 U. S. 462, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112, expressed the opinion that:

"If a conspiracy which is calculated to * * * destroy the value of the operations and reports of the Bureau of Statistics of the Department of Agriculture as fair, impartial, and reasonably accurate would be to defraud the United States by depriving it of its lawful right and duty of promulgating or diffusing the information so officially acquired in the way and at the time required by law or department regulations, it is perfectly plain that a conspiracy which is calculated to obstruct and impair, corrupt, and debauch an election where Senators and Representatives in Congress are to be elected, would be to defraud the United States by depriving the government itself of its lawful right to have such Senators and Representatives elected fairly and in accordance with the law."

Apparently the opinion proceeds on the assumption of an analogy between the obstruction of operations of the constituted government and obstruction of an election by which the people of the state make their choice of Representatives in Congress. Whether such assumption is justified requires careful examination and further consideration.

Assuming that the United States has such an interest in the election of a Representative in Congress as gives it constitutional power to pass statutes safeguarding such an election, no such statute is involved, and in the present case we are not directly concerned with any other existing statute passed by Congress to this end. The question is whether section 37 of the Criminal Code, in its inclusion of conspiracies to defraud, was intended as a statute for the protection of elections for Representatives in Congress, as well as for the protection of operations of the organized government.

The existence of a constitutional power in Congress to legislate in respect to the conduct of those elections whereby the people of a particular state choose their Representatives in Congress is of slight assistance in determining whether, by this conspiracy statute, it was intended to do so.

For many years this power was reserved, and was not exercised.

In the dissenting opinion of Mr. Justice Lamar in U. S. v. Mosley, 238 U. S. 388, 35 Sup. Ct. 904, 59 L. Ed. 1355, is a reference to the legislation under this power, and to the report of the committee (House Report No. 18, 53d Congress, 1st Session) as to the policy of federal legislation concerning elections held under state laws. See, also, Ex parte Siebold, 100 U. S. 371, 25 L. Ed. 717; Ex parte Clarke, 100 U. S. 399, 25 L. Ed. 715.

The question of protecting the United States against the class of frauds which involve merely the relations of the offender and the United States, and the question of legislating respecting the conduct of the elections whereby the people of the respective states choose their Representatives in Congress are substantially distinct, so distinct in substance that it is highly improbable that it was intended to legislate on both together. The Curley Case (C. C.) 122 Fed. 738, and 130 Fed. 1, 64 C. C. A. 369; Hass v. Henkel, 216 U. S. 462, 479, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112; and the cases other than the Aczel Case, involved no consideration of the relations between state and national governments, or of the political policy of exercising the constitutional power of Congress to legislate concerning the elections which are primarily the act of the people of the states in choosing their Representatives.

It is of course possible, by the use of abstract terms, to bring under a single classification things which are practically and substantially different. It is not enough, however, that the United States may be able to show that a violation of a constitutional right of the United States was contemplated by conspirators. We must find other than a verbal justification for giving to section 37 of the Criminal Code so broad a scope. It is a familiar rule that a thing may be within the letter of the statute, and yet not within the statute, because not within its spirit, nor within the intention of its makers. Holy Trinity Church v. U. S., 143 U. S. 457, 459, 12 Sup. Ct. 511, 36 L. Ed. 226.

The right of the United States in respect to these elections is a constitutional right to legislate or not to legislate as is deemed expedient or necessary. With this right, or with its exercise, no interference is charged in the indictment. But it is said that there is also in the government a right to have its Senators and Representatives elected fairly and in accordance with law, even when Congress has not legislated to define the right. It is inaccurate to say that the indictment charges a conspiracy to defraud the government of this right, nor can it be said that it is charged that the United States is obstructed in the performance of any active function in respect to this right. It may be said that this theoretical right is violated by doing what is inconsistent with it, and that a violation of the right is in a sense a fraud upon the United States. But in the inquiry whether section 37 was intended to vindicate this right, or to afford protection against its violation, we may consider what protection is otherwise afforded.

In Ex parte Siebold, 100 U. S. 392, 25 L. Ed. 717, it was said:

"As a general rule, it is no doubt expedient and wise that the operations of the state and national governments should as far as practicable be conducted separately, in order to avoid undue jealousies and jars and conflicts of jurisdiction and power. But there is no reason for laying this down as a rule of universal application."

In the dissenting opinion in Ex parte Clarke, 100 U. S. 420, 25 L. Ed. 715, Mr. Justice Field emphasizes the interest of the states in maintaining the purity of such elections, and says:

"I do not think that any apprehension need be felt if the supervision of all elections in their respective states should also be left to them."

This is a statement of a political policy which seems generally to have prevailed over the opposite policy by the repeal of the statutes which were adopted in reconstruction times.

In considering whether section 37 was intended as an exercise of constitutional power to protect against fraud in state elections, it is proper to consider that the so-called right of the United States to have duly chosen Representatives in Congress is safeguarded by the primary interest of the people of the states in this respect, and by the laws of the states, and that for this reason congressional legislation on the subject generally has been regarded as unnecessary.

It cannot be said that Congress was under any positive duty to legislate for the protection of state elections for members of Congress, or that there is any presumption of an intent to do so. But the right of the United States to duly elected Congressmen is protected by the Constitution itself in a provision which indicates distinctly the policy of excluding questions of this character from the jurisdiction of the courts, as well as of avoiding conflict between state and national governments, even though the right of Congress to legislate, if necessary, is reserved.

The House of Representatives is made the final judge of the elections, returns, and qualifications of its own members. The Representatives of all the other states pass upon the question whether the Representative of a particular state has been duly elected. The apparent intent was to remove such questions from executive, judicial, or even

234 F.—29

legislative control, and to confide them to the Representatives directly chosen by the people. The United States cannot be defrauded by the payment of a salary to one whose right to a seat is formally established by the House.

The constitutional provision is the ultimate protection of the United States in its so-called right to have duly elected representatives.

It is urged that the conspiracy is to deceive and defraud the House of Representatives, a body made up of officers of the United States. In Lamar v. U. S., May 1, 1916, 241 U. S. 103, 36 Sup. Ct. 535, 60 L. Ed. 912, it was held by the Supreme Court that a member of the House was a legislative officer, and that section 32 of the Criminal Code was applicable to false personation of such an officer.. But, as was said in the opinion, the issue in that case was not a constitutional one, but of statutory construction.

Nothing in that opinion serves to abolish the clear distinction pointed out in Burton v. U. S., 202 U. S. 344, 369, 370, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392, between offices created by or existing under the direct authority of the national government, as organized under the Constitution, and offices the appointments to which are made by the states, acting separately, albeit proceeding in respect to such appointments under the sanction of that instrument. It was said:

"While the Senate, as a branch of the legislative department, owes its existence to the Constitution, and participates in framing laws that concern the entire country, its members are chosen by state Legislatures, and cannot properly be said to hold their places 'under the government of the United States.'"

Primarily a fraud upon a state election for Representatives in Congress is a fraud upon the right, not of the United States government, but of the people of a particular state. It may be a fraud on the elective franchise and civil rights of citizens, and the extent to which Congress has exercised its constitutional right in that respect is defined in chapter 3 of the Criminal Code, which is not here invoked.

In chapter 4 "Offenses against the Operations of the Government" are treated as a distinct classification, though it may be said that the chapter includes also a section relating to federal elections, etc. Section 37, which is included in chapter 4, can be given full effect as a statute for the protection of the operations of the organized government. If we regard it as a statute relating to the first steps which are taken by the citizens of states in the choice of Representatives and in the organization of the government, we then may have the United States asserting in the courts the illegality of the action of the people of the state in the choice of Representatives, and this in spite of the constitutional provision that the ultimate decision of the question is not intrusted to any one of the departments of the government, either executive, judicial, or legislative, but to a special tribunal—the House itself.

It does not matter that the charge is only of conspiracy to elect illegally, and of overt acts in pursuance of that conspiracy. If bribery in state elections is not made a federal offense because of the primary interest of the states in protecting their own elections, and because of

the provision of a special constitutional tribunal for the trial and settlement of such questions, the same reasons exist against trials for conspiracy to bribe. A charge of a conspiracy to bribe, with bribery as an overt act, may bring before the court substantially the same questions as if the statute were directly against bribery.

The political considerations of the relation between the people of the state and the national government are substantially the same in both cases.

If, for reasons of public policy, the constitutional power to legislate in the one case has been reserved, it seems inconsistent that it should have been exercised in the other.

Every completed bribery could be charged as a conspiracy to bribe, with overt act of bribery, and thus the courts might be required to adjudicate upon the same matters that are to come before the House, or upon which the House already has decided. The rule that the judicial tribunals must not hamper or embarrass the other departments by prejudging the questions which they will have to decide, or attempting to review the decisions already made (Black's Const. Law, p. 85), affords also a reason for adopting a construction restricting section 37 to frauds affecting the operations of government, and for not extending it to frauds affecting the action of the people of a particular state toward organizing the government by the election of Representatives.

The policy of leaving to the states themselves the control of elections for presidential electors, and of providing for frauds in such elections (see In re Green, 134 U. S. 377, 380, 10 Sup. Ct. 586, 33 L. Ed. 951), seems consistent with the same policy respecting Representatives in Congress.

Yet the argument of the United States as to the scope of section 37 would require that a conspiracy to commit fraud in the election of presidential electors should be included.

The right to "duly elected Congressmen" is of the same nature as the right to a duly elected President and Vice President, etc.

In fact, if a violation of a theoretical constitutional right of the government not declared by statute is to be deemed a fraud, the conspiracy statute will be so broadened as to expand it beyond the scope of legislative foresight. Repugnancy to a reserved constitutional power of Congress to enact law can hardly be a practical test of fraud. Inconsistency with what Congress has power to protect, but has not protected, by law, or with reasons why it might legislate if it saw fit, is not a satisfactory test of what shall constitute a defrauding of the United States under section 37.

As the defendants' brief points out, there is a sharp and clear distinction between a conspiracy to obstruct the administration of a law of the United States and a conspiracy which affects the constitution of one of the great departments of government. While there are two sides to the matter, one state and one national, the interest of the United States is so well protected otherwise that it cannot be presumed that the conspiracy statute was enacted with any thought of the application which the government now seeks to make. To so apply the statute takes it out of the definite sphere of protecting and assisting the opera-

tion of organized government into the distinct sphere of state action in performing what is peculiarly a state function, the choice of state Representatives in Congress. It also confers upon the courts an extensive jurisdiction in respect to political matters, with the risk of judicial decisions at variance with the decisions of the tribunal which has power of final decision. It might so affect a candidate for Representative, or a Representative-elect, or even a presidential elector, as to impose upon him the duty of appearing in court for vindication of his rights or his character, though the Constitution has provided another tribunal for that purpose, and though statutes have provided a procedure differing from that of the courts. It would impose upon the Executive and upon the Department of Justice the duty of enforcing the law, of making the necessary investigations, and would bring that one of the executive departments into the control of prosecutions affecting the Constitution of a branch of the legislative department.

Aside from the opportunity which would be afforded for making the courts an instrument for influencing political matters, we may consider that as a consequence we may have a conspiracy to corrupt a state election tried before the United States court of another district and in another state. Under the decision in Hyde v. U. S., 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614, overt acts performed in one district by one of the conspirators give jurisdiction to the court of that district as to all the conspirators. This would give to the Department of Justice an opportunity to select a place of trial in some state remote from the actual place of conspiracy, or from the state in which the Representative was elected, because of the commission of some overt act, such as the writing of a letter by one of the conspirators in furtherance of the conspiracy.

It is impossible to believe that, in extending the conspiracy statute to embrace frauds other than those upon the revenue, it ever occurred to any members of Congress that they were legislating upon the subject of congressional or presidential elections, or that questions of public policy as to the relations between state and nation were involved. This subject is so important, and of such special character, that it would have been dealt with specifically, and not in an omnibus clause, had it been intended to deal with it at all.

The present indictment, in my opinion, is founded upon an undue extension of the conspiracy act, which carries it beyond its proper sphere and brings it into direct conflict with the policy of noninterference in state elections for Representatives in Congress—a policy evidenced by the general course of legislation or nonlegislation on the subject of the relations of state and national government in respect to bribery at congressional elections.

Because the subject-matter of the regularity of state elections for Representatives is so substantially different from that of any of the other cases of fraud which have been held to be within the conspiracy statute; because the rights of the United States in such an election are to be determined by the House of Representatives itself, and are to be protected by the states which have the primary interest, and a more direct interest than the government itself, in the choice of Representatives; because the questions are to such an extent political ques-

tions, and for other reasons above stated—I am of the opinion that section 37 cannot be so construed as to include the matters set forth in this indictment.

I am therefore of the opinion that the demurrers must be sustained on the fundamental ground.

[2] If we assume, however, that section 37 covers a conspiracy to corrupt a state election for Representatives in Congress by bribery of voters, there will remain the question whether this indictment properly charges such a conspiracy. The briefs deal with this matter at great length, but only a part of the arguments need be considered. It is charged that the defendants conspired "to defraud the United States by corrupting and debauching the general election held in the town of Coventry * * * the 3d day of November, 1914, at which said election a candidate for Representative in Congress was voted for, chosen and elected," etc., in manner following:

"Said defendants did devise a scheme to bribe, influence, corrupt, and debauch the voters of the town of Coventry on, to wit, the 3d day of November, 1914, at which time and place a general election was held for the election of state officers and for a Representative in Congress."

The indictment proceeds to charge "as a part of said conspiracy" various subconspiracies, so to speak, several of which have no apparent or direct relation to the election of a Representative in Congress, but relate to corruption of the so-called general election. One "part of said conspiracy" is to bribe and to vote qualified electors for Representative in Congress. Then follow as "parts of said conspiracy" charges of conspiracy to defraud by committing a "willful fraud" upon article 1, § 2, of the Constitution, section 2 of chapter 123, Gen. Laws R. I. 1909, relating to liquor licenses and other topics; section 3, c. 20, Gen. Laws R. I. 1909, respecting bribery at elections, and various other matters too numerous for brief statement. There follows an allegation that in pursuance of "said unlawful and felonious conspiracy," etc., and to effect the object of the same, certain acts were done. The overt acts are thus connected, not with any specific part of the conspiracy, but with the one main conspiracy; i. e., to corrupt the "general election."

It is impossible to tell from the indictment whether the overt acts relate to the election for Representative in Congress or to the election for state officers.

It is impossible to reject as surplusage those charges which are not connected with the election for Representative in Congress, or those charges which ambiguously refer to "a general election," comprehending the state officers as well as a Representative in Congress.

By thus confusing elections over which Congress has no control and elections over which it may constitutionally exercise control, and by referring the overt acts to an equivocal unit, the "general election," we have irrelevant and relevant matters so firmly entangled that it seems impossible to extricate them. The allegations which do not appear to have a connection with, or are only argumentatively connected with, the election of Representative, cannot be rejected; for, if this were done, it would be impossible to say whether in the opinion of

the grand jury the overt acts were in pursuance of what was rejected or of what was retained.

Were this indictment to stand, it would be possible for the United States to introduce a large amount of evidence relating to the election of state officers, or to other state matters, or of so ambiguous a character that to what it did relate could only be guessed.

The decision in Re Coy, 127 U. S. 731, 8 Sup. Ct. 1263, 32 L. Ed. 274, which relates to returns covering both state and federal elections, affords not the slightest support for this indictment, or for the theory of a "general election" upon which it is drawn. On the contrary, it is essential that the indictment should be strictly confined to the election for Representatives, and should avoid all confusion with state elections. Blitz v. U. S., 153 U. S. 308, 14 Sup. Ct. 924, 38 L. Ed. 725; U. S. v. Morrissey (C. C.) 32 Fed. 147, 152.

I am of the opinion, therefore, that the indictment is demurrable also on the ground that the indictment is so vague, uncertain, insufficient, and duplicitous in its allegations that the defendants are not sufficiently apprised of the nature of the charge against them to enable them to prepare their defense thereto. Even if it be a crime under section 37 to conspire to corrupt an election for a Representative in Congress, I am of the opinion that the defendants would be deprived of their right to be informed of the nature of the offense by putting them to trial upon this indictment.

I desire to acknowledge the great diligence, research, and ability shown alike by counsel for the United States and for the defendants in the preparation of the comprehensive briefs upon the important questions that are raised in this case.

For the reasons stated in the opinion the demurrers are sustained.