**UNITED STATES v. SOEDER et al.**
(two cases).
Nos. 12807, 12825.

District Court, W. D. Missouri, W. D.
April 10, 1935.

Maurice M. Milligan, U. S. Dist. Atty., of Kansas City, Mo.

Robert M. Murray, of Kansas City, Mo., for Karl N. Soeder.

O. S. Hill and John B. Gage, both of Kansas City, Mo., for C. Edgar Blomquist, Theodore H. Lampe, and Martin-Blomquist & Lee Commission Co.

REEVES, District Judge.

The indictments in the above cases are based upon section 88, title 18 U. S. C. (18 USCA § 88) relating to the subject of conspiracies. By this section it is provided, among other things, that: "If two or more persons conspire * * * to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined," etc.

It is averred in the indictments that the defendants violated certain policies and regulations of the Secretary of Agriculture in his effort to carry out the provisions of an act approved May 12, 1933 (see 7 USCA §§ 601–620), entitled "Agricultural Adjustment." Among other provisions of the act was one (section 8, title 1, section 608, title 7, U. S. C. [see 7 USCA § 608]) for "reduction in the production for market * * * of any basic agricultural commodity, through agreements with producers or by other voluntary methods, and to provide for * * * benefit payments in connection therewith * * * in such amounts as the Secretary deems fair and reasonable, to be paid out of any moneys available for such payments."

By paragraph (c), section 10, title 1 of the Act, or paragraph (c), section 610, title 7, U. S. C. (see 7 USCA § 610 (c), the Secretary of Agriculture was clothed with power, "with the approval of the President, to make such regulations with the force and effect of law as may be necessary to carry out the powers vested in him by this chapter," etc.

The declared policy of the government, as expressed by section 2, title 1 of the Act (7 USCA § 602), was, among other things, "to establish and maintain such balance between the production and consumption of agricultural commodities, and such marketing conditions therefor, as will reestablish prices to farmers at a level that will give agricultural commodities a purchasing power with respect to articles that farmers buy, equivalent to the purchasing power of agricultural commodities in the base period. The base period in the case of all agricultural commodities except tobacco shall be the prewar period, August 1909–July 1914."

By section 11, Title 1 of the Act (or section 611, title 7, U. S. C. [see 7 USCA § 611]), the Congress defined "basic

agricultural commodity" as meaning, among other commodities, "hogs."

Pursuant to the power vested in the Secretary of Agriculture, he undertook to make benefit payments to the producers of said commodity. In order that such benefits might reach the producers, as contemplated by the statute, he promulgated certain rules and regulations as provided by the act. These rules and regulations undertook to put restrictions upon the manner of making such purchases so that the benefits would directly reach the producer in each case. This was not only the declared policy of the Congress, but was contemplated by statute, and the Secretary of Agriculture endeavored to carry out such policy.

The indictments charged that the defendants were not producers but, through misrepresentation and deception, they pretended to comply with the law and regulations of the Secretary, and by such means sold hogs to the government contrary to the purposes of the act. Counsel for the defendants have earnestly argued in support of their demurrers that the regulations of the Secretary were not approved by the President, and, moreover, they say the whole act involves a delegation of legislative authority to the Secretary of Agriculture.

1. A proper ruling upon the demurrers does not invoke an application of the principle urged by counsel. The indictment charges that the defendants conspired to defraud the United States.

█ The statute relating to the subject of Conspiracies is very broad, and it is directed against any conspiracy "to defraud the United States in any manner or for any purpose." 18 USCA § 88. Pecuniary loss is not necessary, but it means any impairment of the administration of governmental functions. United States v. Goldsmith (C. C. A.) 68 F.(2d) 5, loc. cit. 7.

In the case of Haas v. Henkel, 216 U. S. 462, 30 S. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112, an indictment was returned against Moses Haas and others in the District of Columbia, wherein the defendants were charged with a conspiracy to defraud the United States. The conspiracy to defraud, in effect, was that the defendants would cause false statistical reports to be issued from the Department of Agriculture. Certain of the conspirators were to have advance information of the issue of such reports. In 216 U. S. 462, at page 479 of the opinion, 30 S. Ct. 249, 253, commenting upon the counts of the indictment, the court said: "These counts do not expressly charge that the conspiracy included any direct pecuniary loss to the United States, but, as it is averred that the acquiring of the information and its intelligent computation, with deductions, comparisons, and explanations, involved great expense, it is clear that practices of this kind would deprive these reports of most of their value to the public, and degrade the department in general estimation, and that there would be a real financial loss. * * * The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government."

This rule was followed in Wallenstein et al. v. United States (C. C. A.) 25 F.(2d) 708, where the defendants were indicted for conspiring to defraud the United States in its governmental function in the control and regulation of intoxicating liquor for medicinal purposes.

█ It is not necessary that the defendants may have conspired to commit an offense against the United States. In the case of Curley et al. v. United States, 130 F. 1, loc. cit. 8, the Circuit Court of Appeals for the First Circuit held that the section of the statute on conspiracy to defraud the United States had reference to the broader purposes, "that of protecting the government in its administration under the law, as well as protecting the property of the government which it holds as an incident to the fundamental purpose for which the government was instituted." And the court further said, at page 9 of the opinion: "As a moral offense, defrauding the government of its right and its facilities for rendering a proper service to the people, that being the prime object for which it exists, cuts deeper than defrauding the government of a wheelbarrow, and it is unquestionably within the power of the government to protect itself against that kind of a fraud."

In the case of United States v. Slater, 278 F. 266, loc. cit. 269, the District Court of the Eastern District of Pennsylvania said: "The word 'fraud' has so many applied meanings, as used, that it does not

lend itself to definition. Its meaning in this act of Congress has, however, been found. It is not limited to the thought of the deprivation of property by the acts of wile or deceit, or to depredations upon property rights, but is broad enough to include any act which interferes with or hampers the United States in the successful prosecution of any policy established by law."

The same reasoning may be found in United States v. Stone (D. C.) 135 F. 392, loc. cit. 398, where the court quoted with approval from Curley v. United States (C. C. A.) 130 F. 1, to the effect "that Congress intended, by section 5440, [now Section 88, title 18, U. S. C. (18 USCA § 88)], to protect the government 'in its rights, privileges, operations, and functions against all fraudulent operations, impositions upon its rights as well as properties, and to this end employed the most general terms and the broadest possible phraseology.'"

The case of United States v. Newton (D. C.) 48 F. 218, 219, is in point. A demurrer to the indictment was overruled. The principal ground of the demurrer was: "That the object of the conspiracy is not shown to be criminal, under the laws of the United States, nor is it made to appear that the means made use of or contemplated in the carrying out of the conspiracy were in themselves criminal." The court overruled the demurrer, and in its discussion of the case did hold that the fraud in that case was a crime and punishable under a statute of the United States.

It was specifically held in the United States v. Stone that the indictment need not aver that the conspiracy was to commit an act in violation of the criminal statute. The other cases above cited were to the same effect.

In view of the foregoing, it is not necessary to pass on the question of the validity of regulations promulgated by the Secretary of Agriculture. The defendants are not being prosecuted under those sections.

The averments of the indictment indicate that the defendants recognized the regulations of the Secretary and evaded the provisions thereof by pretending to comply therewith. The defendants would not be heard under this conspiracy in-dictment to urge invalidity of rules which it is alleged they pretended to observe.

The demurrers should be and are overruled.