**UNITED STATES ex rel. CARROLLO**
**v. BODE.**

No. 14701.

United States Court of Appeals,
Eighth Circuit.

April 28, 1953.

Rehearing Denied May 19, 1953.

James Daleo and Richard P. Shanahan, Kansas City, Mo., for appellant.

Harry F. Murphy, Asst. U. S. Atty., Kansas City, Mo. (Sam M. Wear, U. S. Atty., Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is from a judgment which denied appellant's application for a writ of habeas corpus.

It appeared on the trial that the applicant for the writ entered this country at New Orleans in January, 1906, when he was three years and five months of age and that he has resided here ever since without acquiring United States citizenship. He married a citizen of the United States and six children, five daughters and a son, have been born to the marriage, of whom three daughters are married and a daughter aged 14, the son aged 5 and a daughter aged 4 remain at home.

He was sentenced on October 20, 1939, to four years imprisonment upon his conviction of the crime of perjury, 18 U.S.C. § 231, now 18 U.S.C. § 1621, and on July 7, 1950, he was again sentenced to two years imprisonment upon his conviction on a plea of guilty under the first count of an indictment which charged that he "did * * * feloniously conspire * * * with * * * other persons * * * to commit an offense against and to defraud the United States, * * * * by * * * carrying on the business of a wholesale liquor dealer * * * while * * * wilfully

failing to pay the special tax required to be paid by wholesale liquor dealers." [1]

On September 7, 1950, proceedings were commenced for his deportation under § 19(a) of the Immigration Act of 1917, 8 U.S.C.A. § 155(a), which provides for the deportation of any alien who subsequent to May 1, 1917, is sentenced more than once to imprisonment for one year or more because of conviction in this country of any crime involving moral turpitude committed at any time after entry.[2] A warrant was issued for his arrest at the commencement of the deportation proceedings and he was accorded a hearing as a result of which it was found that he was subject to deportation and it was ordered that he be deported. He appealed to the Board of Immigration Appeals which rendered decision on December 7, 1951, dismissing the appeal. Warrant-deportation of alien was issued and the application for habeas corpus here involved was filed and a show cause order issued. Return was made to that order and a traverse to the return. The case was tried and resulted in the judgment dismissing the application for the writ here appealed from.

It is not contended for the appellant that the crime of perjury of which he was convicted and for which he was sentenced to imprisonment for more than one year in 1939 was not "a crime involving moral turpitude" within the meaning of 8 U.S.C.A. § 155(a). It is admitted that that crime involved moral turpitude. But the defense before the immigration authorities and

ground of the application for the writ of habeas corpus was, and the contention for reversal in this court is, that Carrollo was not "sentenced more than once * * * for a * * * crime involving moral turpitude, committed at any time after [his] entry" into this country, in that the crime of which he was convicted and for which he was sentenced on July 7, 1950, was not "a crime involving moral turpitude" within the meaning of Section 155(a).

It appeared to the Hearing Officer in the Immigration Service on the hearing of Carrollo's case before him that the contention was settled against Carrollo by the decision of the Supreme Court in Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886, and on the appeal of the case to the Board of Immigration Appeals the Board again considered that supreme court decision in application to the case and arrived at the same conclusion.

The District Court did not write a formal opinion in support of the denial of habeas corpus but its oral comment indicates its approval of the conclusion of the immigration authorities. Our own study of the decision has not shown that the conclusion was erroneous.

The Supreme Court's opinion in the case relied on shows that the alien Sam De-George there involved sought relief by habeas corpus from an order that he be deported for having been more than once sentenced after his entry because of conviction of crimes involving moral turpitude, and it appeared, as stated by the Supreme

1. In the second count of this same indictment he was charged with the substantive offense of carrying on the business of a wholesale liquor dealer and wilfully failing to pay the special tax required by law to be paid by wholesale liquor dealers. He pleaded guilty to the second count and was sentenced to two years of imprisonment to run concurrently with the sentence on count one.

Apparently the "Special tax" involved was the tax of $100 on wholesale liquor dealers under 26 U.S.C. § 3250(a) (1), amended and raised to $200 on October 20, 1951.

2. 8 U.S.C.A. § 155(a): "* * * Any alien who, after May 1, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry; * *. * shall, upon the warrant of the Attorney General, be taken into custody and deported * * *. Feb. 5, 1917, c. 29, § 19, 39 Stat. 889; Ex.Ord. No. 6166, § 14, June 10, 1933; Reorg.Plan No. V, eff. June 14, 1940, 5 Fed.Reg. 2423, 54 Stat. 1238; June 28, 1940, c. 439, Title II, § 20, 54 Stat. 671."

Court, 341 U.S. 223, 226, 71 S.Ct. 703, 705, that he had "on two separate occasions been convicted of the same crime, conspiracy to defraud the United States of taxes on distilled spirits. Therefore, our inquiry in this case is narrowed to determining whether this particular offense involves moral turpitude." Upon full discussion the court declared, at page 229 of 341 U.S., at page 706 of 71 S.Ct.: "In view of these decisions, it can be concluded that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude. It is therefore clear, under an unbroken course of judicial decisions, that the crime of conspiring to defraud the United States is a 'crime involving moral turpitude'".

█ In the case at bar it was shown without dispute that the alien herein, Vincenzo Carrollo, in addition to his conviction for perjury after his entry, was on a subsequent occasion convicted on his plea of guilty to the charge that he did "conspire to defraud the United States." He therefore came squarely within the requirement of Section 155(a) as an alien who "shall, upon the warrant of the Attorney General, be taken into custody and deported."

(1) It has been argued here that this case should be distinguished from the De-George case, supra, and a different result reached because this appellant conspired to defraud the United States by violating a different penal statute from the one that DeGeorge conspired to violate. The section which DeGeorge conspired to violate, 26 U.S.C. § 3321, denounced removing, deporting or concealing any commodity in respect whereof a tax is imposed with intent to defraud the United States of such tax, whereas the section by the violation of which this appellant conspired to defraud the United States, 26 U.S.C. § 3253, denounced carrying on the business of wholesale liquor dealer and wilfully failing to pay the special tax as required by law.

But we think the unequivocal declaration by the Supreme Court that "the crime of conspiring to defraud the United States is a 'crime involving moral turpitude'" requires this court to hold that when this appellant pled guilty to that very crime and was sentenced for conspiring to defraud the United States he brought himself within the statute that requires his deportation. Reasons why aliens ought not to be deported for that crime are ably set forth in the dissenting opinion in the DeGeorge case. They were rejected by the Supreme Court and cannot prevail here.

(2) It is also argued here for appellant that even if he was sentenced more than once for crimes involving moral turpitude within the intendment of the deportation statute he ought none the less to be granted habeas corpus because the warrant issued for his arrest at the commencement of the deportation proceedings and the warrant-deportation issued after the denial of his appeal by the Board of Immigration Appeals were defective. It is contended that neither warrant sufficiently describes the "more than one crime involving moral turpitude" prescribed in Section 155(a).

█ We think the contention is without merit. Each of the warrants was issued by competent authority and each contained the declaration that the appellant alien (naming him) was subject to be deported (or to deportation) pursuant to (or under) the following provisions of law (or the laws of the United States), to-wit: "The Act of Feb. 5, 1917, in that on or after May 1, 1917, he has been sentenced more than once to imprisonment for terms of one year or more because of conviction in this country of crimes involving moral turpitude, committed after entry, to-wit: * * *".

Thus each of the warrants contained in the words of the statute the charge against the alien on which he was accorded hearing and appeal as well as the grounds of the administrative determination that he was subject to deportation and that he be deported.

It does appear that both warrants contained after the above quoted words a further identification of the "more than one crimes involving moral turpitude" and the sentencing on July 7, 1950, was referred to as being "conspiracy to engage in the wholesale liquor business and at the same

time wilfully failing to pay the special tax required to be paid and engaging in the wholesale liquor business and at the same time wilfully failing to pay the special tax required by law to be paid by wholesale liquor dealers."

But there is no indication anywhere in the record that there was at any time throughout the administrative proceedings against the alien any uncertainty about the fact that the immigration agency was charging and relying upon the sentencing on July 7, 1950. Though the identifying words of the warrants following the statutory words and the scilicet did not set forth all of the elements of the crime charged in the indictment on which the sentencing of July 7, 1950 was based, they did accomplish a sufficient identification of the case in which the sentencing occurred and the indictment itself (which was lengthy) was always in evidence. After charging the conspiracy to defraud the United States, it set up 70 overt acts to effect the object of the conspiracy, each of which was an act tending to defraud the United States of a tax.

(3) There is a further contention for reversal that the court erred in considering crimes other than those charged in the warrants, but we think the record clearly shows that the deportation order was issued and was sustained and habeas corpus was denied solely on account of the appellant's two convictions and sentences of October 20, 1939 and July 7, 1950, respectively. It is true that the appellant here was convicted of a number of crimes for which he was sentenced on the same date of October 20, 1939, but the District Court was evidently well aware of and acted with due regard to the decision of the Supreme Court in Fong Haw Tan v. Phelan, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433. The court there held 336 U.S. loc. cit. 9, 68 S.Ct. loc. cit. 375 that it was the intent of Congress to deport "repeaters", viz. "persons who commit a crime and are sentenced, and then commit another and are sentenced again". The appellant is in that category and the judgment denying his application for the writ of habeas corpus is affirmed.

Affirmed.