MATTER OF E—

In DEPORTATION Proceedings

A-8600520

*Decided by Board August 31, 1961*

Crime involving moral turpitude—Conspiracy to interfere with lawful functions of U.S. agency.

Conspiracy to defraud the United States under 18 U.S.C. 371 by impeding, obstructing, and attempting to defeat the lawful functions of an agency of the United States is a crime involving moral turpitude.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime involving moral turpitude committed within five years after entry and sentenced to confinement therefor in a prison or corrective institution for a year or more, to wit, conspiracy to defraud the United States by impeding, impairing, obstructing and attempting to defeat the lawful functions of the Securities and Exchange Commission, an agency of the United States, in violation of Title 18, U.S.C., sections 2 and 371, by unlawfully, willfully and knowingly failing to file required reports; hindering, obstructing and delaying the required filing of documents, reports and information; and by causing to be made and filed with the New York Stock Exchange and the Securities and Exchange Commission reports which were false and misleading with respect to material facts and containing omissions of material facts.

### BEFORE THE BOARD

**DISCUSSION:** Respondent is 56 years of age, married, male, alien, a native of China and a citizen of the United Kingdom and colonies. His last entry was in August 1958, after a brief visit to Canada. He states that he has been in the United States since 1950, that he was admitted on January 7, 1954, for permanent residence at Rouses Point, New York, after having gone to Canada to secure an immigrant visa. He was ordered deported from the United States on the charge set forth above and he appeals to this Board.

On January 27, 1960, respondent and others were convicted in the United States District Court for the Southern District of New York of a conspiracy to defraud the United States in violation of 18 U.S.C. 371. The defendant pleaded not guilty and was con-

victed by a jury on 15 of 21 counts of the indictment of the offenses of unlawfully, willfully and knowingly failing to file with the New York Stock Exchange and the Securities and Exchange Commission statements indicating the beneficial ownership and the changes in the beneficial ownership of equity securities; hindering, delaying and obstructing the making and filing of annual and current reports required to be filed with the New York Stock Exchange and the Securities and Exchange Commission; and conspiracy to commit these offenses (Title 15, secs. 78p(a), 78ff(a), 78t(c) ; Title 18, secs. 2 and 371, United States Code) and to defraud the United States by impeding, impairing, obstructing and attempting to defeat the lawful functions of the Securities and Exchange Commission. He was sentenced to imprisonment on February 17, 1960, and on September 30, 1960, his prison sentence was reduced from 2 years and 11 months to 1 year and 11 months on count 21, the conspiracy count, and he was fined $10,000. Prison sentences on other counts were to run concurrently with each other and concurrently with the prison sentence on count 21.

The conviction of respondent and others was affirmed in *United States* v. *Guterma*, 281 F.2d 742 (C.A. 2, 1960), referred to in respondent's memorandum (p. 5), wherein the court said:

. . . the Government's case *on the conspiracy count* and on Count 5, relating to obstructing the filing of the 10–K report, *was overwhelming established.* . . (Emphasis supplied.)

. . . Here we can immediately dispose of Count 5, the charge of intentionally delaying the filing of Jacob's annual report, as to which the proof was so overwhelming and the criticisms of the judge's charge so wholly unmeritorious as to make comment supererogatory.

The court of appeals affirmed the judgment of conviction of E— and his co-conspirators, with the exception of E—'s conviction on count nine. The court sustained the conviction on the other counts, including the conspiracy count, finding no reversible error.

Respondent makes his appeal to the Board primarily on the issue of the inadequacies of the pleading and evidence. The Board's jurisdiction does not extend to retrying the respondent's conviction. Respondent alleges that the indictment charges only that he conspired to violate the laws of the United States and does not adequately allege that he conspired to dafraud the United States. He was found guilty of the offenses set forth in the charge, and his plea that he was not found guilty of a conspiracy *to defraud* the United States is not in accordance with the record. We are bound by the record of conviction, and the "record" includes the indictment, the plea, the verdict and the sentence. *United States ex rel. Zaffarano* v. *Corsi*, 63 F.2d 757 (C.C.A. 2, 1933) ; *United States ex rel. Meyer* v. *Day*, 54 F.2d 336 (C.C.A. 2, 1931) ; *United States ex rel. Robinson* v. *Day*, 51 F.2d 1022 (C.C.A. 2, 1931).

Count 21, paragraph 2, alleges that the "defendants and co-conspirators would defraud the United States" by the overt acts there set forth. The amended judgment and commitment of the court leave no question as to the offenses of which respondent was found guilty. It has long been held that the true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. *Hagner* v. *United States*, 285 U.S. 427 (1932). The sufficiency and adequacy of conspiracy pleading is discussed in *Williamson* v. *United States*, 207 U.S. 425 (1908), and *Glasser* v. *United States*, 315 U.S. 60 (1942). The indictment in the present case, along with the rest of the conduct of the prosecution, was held sufficient by the circuit court of appeals. Certainly the pleading and the order to show cause are adequate by immigration standards.

It is our opinion that the only question before us for determination is whether the alien's conviction was for an offense involving moral turpitude. If the substantive offence charged involves moral turpitude then the conspiracy to commit that offense also involves moral turpitude.[1] We are concerned here primarily with count 21 which charges a conspiracy to defraud the United States under Title 18, U.S.C., section 371.[2] This statute creates two crimes, first, a conspiracy to commit an offense against the United States, and, second, a *conspiracy to defraud* the United States in any manner or for any purpose. Respondent was convicted of *both* offenses and sentenced for both offenses.

There are many cases wherein the defendants conspired to defraud the Government of money, either in income taxes or liquor taxes, or to defraud the United States of its governmental functions in the control and regulation of intoxicating liquor for any purpose, and the offenses were found to be crimes involving moral turpitude. We will point out primarily, however, cases wherein

---

[1] *United States ex rel. Berlandi* v. *Reimer*, 30 F. Supp. 767 (S.D.N.Y., 1939); *Mercer* v. *Lence*, 96 F.2d 122 (C.C.A. 10, 1938), cert. den. 305 U.S. 611.

[2] Title 18, U.S.C., section 371, provides as follows:

If two or more persons conspire either to commit any offense against the United States, or to *defraud* (emphasis added) the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

This section includes prior statute 18 U.S.C. 88. The revision differs only from the previous statute by the insertion of the words "or any agency thereof."

the courts have held that pecuniary loss to the Government is not necessary for conviction under 18 U.S.C. 371, or its predecessor, section 88.

An outstanding case wherein the court upheld the conviction, even though the conspiracy to defraud the United States did not involve pecuniary loss to the Government, is *Lutwak* v. *United States*, 344 U.S. 604 (1953). The defendants were convicted for conspiring "to defraud the United States of and concerning its governmental function and right of administering" the immigration laws and the Immigration and Naturalization Service, by obtaining the illegal entry into this country of three aliens as spouses of honorably discharged veterans. The substantive counts against all the defendants were dismissed (on a question of venue), and three of the petitioners were convicted on the conspiracy count.

The majority opinion stated (p. 609):

> There is an abundance of evidence in this record of a conspiracy to contract spurious, phony marriages for the purposes of deceiving the immigration authorities and thereby perpetrating a fraud upon the United States, and of a conspiracy to commit other offenses against the United States.

The court said that this conspiracy constituted a fraud on the United States because Congress, by enacting the War Brides Act, did not intend to "provide aliens with an easy means of circumventing the quota system by fake marriages" (court of appeals decision, 195 F.2d 748 (C.A. 7, 1952)).

*Haas* v. *Henkel*, 216 U.S. 462 (1910), probably the leading case where the defendants were indicted for conspiracy to defraud the United States, states the rule. The conspiracy was that the defendant would cause false statistical reports to be issued from the Department of Agriculture. Certain of the conspirators were to have advance information of the issue of such reports. The court said:

> These counts do not expressly charge that the conspiracy included any direct pecuniary loss to the United States, but as it is averred that the acquiring of the information and its intelligent computation, with deductions, comparisons and explanations involved great expense, it is clear that practices of this kind would deprive these reports of most of their value to the public and degrade the department in general estimation, and that there would be a real financial loss. But it is not essential that such a conspiracy shall contemplate a financial loss or that one shall result. The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of the Government

The court followed *Haas* v. *Henkel* in *United States* v. *Soeder*, 10 F. Supp. 944 (W.D. Md., 1935), wherein the conspirators were indicted under 18 U.S.C. 88 for violating policies and regulations of the Secretary of Agriculture in carrying out the Agricultural Adjustment Act by pretending to comply with the law and regulations of the Secretary of Agriculture. The court said, "The stat-

ute relating to the subject of conspiracies is very broad, and it is directed against any conspiracy 'to defraud the United States in any manner or for any purpose.' Pecuniary loss is not necessary, but it means any impairment of the administration of governmental functions," citing cases.

In *United States v. Pezzati,* 160 F. Supp. 787 (D.C. Col., 1958),[3] the defendants were charged with conspiracy to defraud the United States by fraudulent compliance with section 9(h) of the Labor Management Relations Act of 1947 (29 U.S.C.A. 159(h)) by filing of non-Communist affidavits. The court denied the motion of the defendants to dismiss the indictment, finding that the indictment adequately charged a conspiracy to defraud the United States by the impairment, obstruction and defeat of the lawful functions of the Board, and, therefore, sufficiently stated an offense against the United States. Other cases following the same reasoning are *Curley v. United States,* 130 Fed. 1 (C.C.A. 1, 1904); *Outlaw v. United States,* 81 F.2d 805 (C.C.A. 5, 1936); and *Langer v. United States,* 76 F.2d 817 (C.C.A. 8, 1935). *United States v. Bowles,* 183 F. Supp. 237 (Maine, 1958), held that an Interstate Commerce Commission employee who received $8,000 for services in connection with the sale of the controlling interest in an interstate trucking company had conspired to defraud the United States in its right to have the business of the commission transacted honestly, efficiently and free from corruption. See also *Fiswick v. United States,* 329 U.S. 211 (1946), which reversed only for improper instructions to the jury a conviction under 18 U.S.C. 88 for conspiring with others to defraud the United States in the exercise of its governmental functions by violating the Alien Registration Act of 1940.

*United States ex rel. Popoff v. Reimer,* 79 F.2d 513 (C.C.A. 2, 1935), held squarely that moral turpitude is involved in the fraud against the United States of knowingly aiding an alien not entitled to naturalization to apply for or obtain citizenship. The court (Manton, L. Hand and Swan, J. J.) said:

> . . . Criminal frauds with respect to property have universally, so far as we are advised, been deemed to involve moral turpitude (citing cases). That the fraud relates to obtaining rights of citizenship rather than to property does not, we think, make it any the less contrary to community standards of honesty and good morals. . .

---

[3] This conspiracy was extensively litigated, and the conviction on the first trial was set aside and a new trial ordered under the name of *Travis v. United States,* 247 F.2d 130 (C.A. 10, 1957), but not on any issue of concern here. The convictions were affirmed on retrial, *Travis v. United States,* 269 F.2d 928 (C.A. 10, 1959), and 268 F.2d 218 (C.A. 10, 1959), *per curiam* without written opinion.

As stated above, we have purposely sought cases laid under Title 18, section 371 (or section 88) which do not involve conspiracies to defraud the United States by failure to pay taxes, preferring, instead, to seek authority in cases of conspiracies to defraud the United States by impeding, obstructing and attempting to defeat the lawful functions of agencies of the United States engaged in activities other than the collection of taxes. However, there are a number of cases not to be overlooked concerning conspiracies to avoid the payment of taxes. *Jordan v. DeGeorge*, 341 U.S. 223 (1951), held squarely that a conspiracy to defraud the United States of taxes on distilled spirits is a "crime involving moral turpitude" within the meaning of section 19(a) of the Immigration Act of 1917. The respondent was indicted first with eight other defendants for violating the Internal Revenue Code by possessing whiskey and alcohol "with intent to sell in fraud of law and evade the tax thereon." Less than a year after his release from a federal penitentiary he was again tried and found guilty of conspiring to "unlawfully, knowingly, and willfully defraud the United States of tax on distilled spirits." Citing extensive authority, the court said (p. 227):

> . . . Without exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude. In the construction of the specific section of the Statute before us, a court of appeals has stated that fraud has ordinarily been the test to determine whether crimes not of the gravest character involve moral turpitude. *United States ex rel. Berlandi* v. *Reimer*, 113 F.2d 429 (1940).
>
> In every deportation case where fraud has been proved, federal courts have held that the crime in issue involved moral turpitude [citing cases]. . .
>
> \*    \*    \*    \*    \*    \*    \*
>
> In view of these decisions, it can be concluded that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude. It is therefore clear, under an unbroken course of judicial decisions, that the crime of conspiring to defraud the United States is a "crime involving moral turpitude."

See also *United States* v. *Klein*, 247 F.2d 908 (C.A. 2, 1957) (defendants were convicted of conspiring to defraud the United States by impeding and obstructing the Treasury Department in collection of income taxes); *United States ex rel. Carrollo* v. *Bode*, 204 F.2d 220 (C.C.A. 8, 1953); *Maita* v. *Haff*, 116 F.2d 337 (C.C.A. 9, 1940) (engaging in business of a distiller with intent to defraud the United States of taxes on the spirits distilled); *Guarneri* v. *Kessler*, 98 F.2d 580 (C.C.A. 5, 1938) (smuggling alcohol into the United States with intent to defraud the United States involves moral turpitude).

The Board has followed the above cited judicial decisions in a series of decisions. *Matter of S—*, 2—225 (B.I.A., 1944), found that

426

a conviction of conspiracy to defraud the United States involving an agreement to cause alien members of the German-American Bund when registering under the Alien Registration Act of 1940 to conceal membership therein and fail to state that the Bund was an organization which furthered the public policy, public relations and political activities of a foreign nation, was a crime involving moral turpitude. *Matter of T—*, 2—95 (B.I.A., 1944), also charged a conspiracy under 18 U.S.C. 88, to wit, to defraud the Government of tax on distilled spirits, and we found the crime to be one involving moral turpitude. In *Matter of M—*, 8—535 (B.I.A., 1960), respondent was convicted in 1938 and again in 1941 under 18 U.S.C. 88 for conspiracy to violate the Internal Revenue Act, and the Board found that he was twice convicted of crimes involving moral turpitude in that each indictment charged conspiracy to defraud the United States Government by avoiding taxes levied under the Internal Revenue laws.

Respondent was convicted of conspiring to defraud the United States by the acts set forth in the order to show cause. Conspiracy to defraud the United States under 18 U.S.C. 371 by impeding, obstructing and attempting to defeat the lawful functions of an agency of the United States is a crime involving moral turpitude. All the reported judicial and administrative decisions require such a holding.

Respondent has asked for any discretionary relief available to him. He was informed by the special inquiry officer at the hearing that he is not eligible for any form of discretionary relief. He has a second wife from whom he is separated but not divorced and who lives in England. He stated in a sworn affidavit, April 14, 1960, exhibit 7, that he has been living in a "common-law relationship" from the beginning of 1959 with a United States citizen by whom he has one child. Respondent would be unable to establish good moral character inasmuch as he has been convicted of a crime involving moral turpitude committed within five years after his last entry and has been confined to a prison or corrective institution for a year or more. See section 101(f)(3) and (7). The special inquiry officer was correct that there is no relief from deportation available to respondent under the law. The appeal will be dismissed.

ORDER: It is ordered that the appeal be and is hereby dismissed.